IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WEST PLAINS, L.L.C. d/b/a CT FREIGHT COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> RETZLAFF GRAIN COMPANY, INCORPORATED d/b/a RFG LOGISTICS, BRYCE WELLS, JEFFREY BRADLEY, THOMAS DANNER, REBECCA DANNER, JODY MAY, CHAD NEEDHAM, TODD PAYZANT, SAMANTHA RHONE, CRYSTAL KONECKY ,CINDY SCHOLTING AND DREW WAGGONER <br><br> Defendants. | CASE NO. _____ <br><br><br> COMPLAINT AND JURY DEMAND |

WEST PLAINS, L.L.C. by its undersigned attorneys, alleges the following against Defendants Retzlaff Grain Company, Incorporated, Bryce Wells, Jeffrey Bradley, Thomas Danner, Rebecca Danner, Jody May, Chad Needham, Todd Payzant, Samantha Rhone, Crystal Konecky, Cindy Scholting, and Drew Waggoner.

## THE PARTIES

1.     West Plains, L.L.C. (hereinafter "West Plains") is a limited liability company organized under the laws of the State of Delaware.  West Plains is owned by a single member, QuatrA, LLC, a limited liability company organized under the laws of the State of Delaware.  QuatrA, LLC is owned by the following three Texas family trusts: Aanya Sneha Bhandari 2008 Investment Trust, Ansh Amit Bhandari 2008 Investment Trust, and Aashna Raji Bhandari 2012 Trust.  The Trustees for each of these three

trusts are Amit Bhandari and his wife, Arpita Bhandari, both of whom are residents of the State of Texas.

2.      On information and belief, Defendant Retzlaff Grain Company, Incorporated (hereinafter "Retzlaff") is a corporation organized under the laws of the State of Nebraska. Its principal place of business is located in the State of Nebraska.

3.      On information and belief, Defendant Bryce Wells ("Wells") is a resident of the State of Missouri.

4.      On information and belief, Defendants Thomas Danner ("T. Danner"), Rebecca Danner ("R. Danner"), and Jeffrey Bradley ("Bradley") are residents of the State of Iowa.

5.      On information and belief, Defendants Jody May ("May"), Chad Needham ("Needham"), Todd Payzant ("Payzant"), Samantha Rhone ("Rhone"), Crystal Konecky ("Konecky"), Cindy Scholting ("Scholting"), and Drew Waggoner ("Waggoner") are residents of the State of Nebraska.

6.      This is an action asserting various state law claims, including, inter alia, misappropriation of trade secrets in violation of the Nebraska Trade Secrets Act (Neb. Rev. Stat. §§ 87-501 et seq.), tortious interference with business relationships, tortious interference with employment relationships, breach of the duty of loyalty, conspiracy, and violation of the Computer Fraud and Abuse Act (18 U.S.C. §1030).

## JURISDICTION AND VENUE

7.      Jurisdiction of this matter is predicated upon diversity of citizenship, 28 U.S.C. § 1332, wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

8.      Venue of this matter is predicated upon 28 U.S.C. §1391(b)(2).

9.      The Court has personal jurisdiction over Defendant Retzlaff because it is incorporated under the laws of the State of Nebraska and its principal place of business is located in the State of Nebraska.

10.     The Court has personal jurisdiction over Defendants May, Needham, Payzant, Rhone, Konecky, Scholting, and Waggoner because each of them are residents of the State of Nebraska.

11.     The Court has personal jurisdiction over Defendants Wells, T. Danner, R. Danner, and Bradley because they have actively engaged in an enterprise with Nebraska citizens and a Nebraska corporation and have transacted business in the State of Nebraska, thereby purposefully availing themselves of the protections of laws the State of Nebraska.

## **FACTUAL ALLEGATIONS**

12.     West Plains is an agricultural commodity trading business specializing in merchandising grains, warehouse operation, and transportation.  West Plains also provides market insight, risk management, and logistics support to its customers.  West Plains employs federally licensed and bonded warehousemen that trade whole grains, feed ingredients, freight, and other commodities within North America.

13.     West Plains initiated its operations in February of 2012 by acquiring certain assets of West Plains CO ("WPCO"), a company providing similar agricultural commodity trading, risk management and logistics support business services which was owned by Wells and Patricia Wells.  As part of the asset purchase, West Plains acquired all of the intellectual property of WPCO.

14.     At the time of the asset purchase, Defendants T. Danner, R. Danner, Bradley, May, Needham, Payzant, Rhone, Konecky, Scholting, and Waggoner were employees of WPCO.  They were part of a strong team of employees who had worked together at  WPCO for years in a division known as CT Freight.  Payzant, the most recent addition to the team, had begun his employment in June 2010.  Others, such as Bradley, T. Danner, and R. Danner, had been working together for over five years at the time of the asset purchase.

15.     After the asset purchase, T. Danner, R. Danner, Bradley, May, Needham, Payzant, Rhone, Konecky, Scholting, and Waggoner were offered employment by West Plains. They all accepted employment at West Plains in a division also known as CT Freight.

16.     The trade name of CT Freight was acquired by West Plains from WPCO as part of the asset purchase, along with proprietary and confidential business information, including, but not limited to the: customer lists; contact information; rate structures; trucking company names, rates, routes and schedules, and methodology to acquire and service customers.

17.     Defendants T. Danner, R. Danner, Bradley, May, Needham, Payzant, Rhone, Konecky, Scholting, and Waggoner all were involved in various capacities in the operation of CT Freight.   CT Freight's principal business is providing freight logistic services for its customers located throughout the United States. CT Freight provided those services through its licensed brokers, which included Defendants T. Danner, Bradley, Needham, Payzant, Rhone, and Waggoner. Prior to the asset purchase, CT Freight, as a division of WPCO, engaged in substantially similar freight logistics

services, which were provided through the same licensed brokers, being Defendants T. Danner, Bradley, Needham, Payzant, Rhone, and Waggoner.

18.     Under the terms of the Asset Purchase Agreement between West Plains and WPCO, Wells was to be offered the position of Chief Executive Officer ("C.E.O.") of West Plains.  Wells represented that he would become the C.E.O. of West Plains. However, Wells refused to accept the offer to become C.E.O. immediately after the closing of the Asset Purchase Agreement in 2012, presumably because he was already planning to create a new business to compete directly with West Plains' CT Freight division.

19.     Wells waited until the payment from West Plains cleared before informing West Plains that he would not work as the C.E.O. for West Plains. Wells also refused to accept a subsequent offer made a few days after said closing to serve as a consultant to West Plains to assist in an orderly transition of operations and indicated that he did not want to be bound by any noncompete provisions, presumably because he was already planning to compete directly with West Plains' CT Freight division.

20.     Upon information and belief, Wells is the owner and operator of Retzlaff.

21.     Upon information and belief, Wells, by and through Retzlaff, formed a separate operating division known as RFG Logistics in December 2012 to provide the same freight logistic services as West Plains' CT Freight division.  Retzlaff is therefore a direct competitor of West Plains for the provision of freight logistics services.

22.     Upon information and belief, RFG's principal operations are based in Omaha, Douglas County, Nebraska.

**The Individual Defendants Developed Goodwill With West Plains'
Customers for West Plains' Benefit And At West Plains' Expense**

23.     Defendants T. Danner, R. Danner, Bradley, May, Needham, Payzant,
Rhone, Konecky, Scholting, and Waggoner began working as West Plains employees in
or around February of 2012, after West Plains acquired the assets and intellectual
property from WPCO. Collectively, they carried out the same freight logistics services
they previously provided as employees of WPCO.

24.     Defendants T. Danner, Bradley, Payzant, Rhone, Waggoner, and
Needham were employed as Freight Brokers at West Plains. They held substantially
similar positions at WPCO.

25.     Defendants R. Danner, Scholting, Konecky, and May were employed in
accounting and administrative support positions at West Plains.  They held substantially
similar positions at WPCO.

26.     Prior to and after the asset purchase of WPCO, T. Danner, R. Danner,
Bradley, May, Needham, Payzant, Rhone, Konecky, Waggoner, and Scholting ("the
Individual Defendants") employed a team approach to the provision of freight logistics
services for their customers. They comprised substantially all of West Plains' employees
responsible for the operation of the CT Freight division.

27.     The team approach is critical to the freight logistics services business
when handling large volumes of customers because market dynamics are constantly
changing and logistics personnel need to have current data regarding multiple factors in
order to make sensible decisions.  For example, information regarding which truck
companies currently have available trucks, which truck companies may provide
favorable pricing because of temporary declines in demand for their services, which

customers will be needing trucks and at what locations, and payment histories of customers indicating their willingness to accept particular pricing, among many other factors, must be quickly assessed in order to offer competitive logistics services. Having an organizational structure whereby different parts of the team aggregate their information on a constant basis in order to understand all of the foregoing factors in real-time is needed in order to remain competitive. The collective information of the team provides a proprietary overview of the market. The knowledge of individual team members regarding these factors can only be developed by working with customers and trucking companies that the West Plains routinely retains. This information is highly confidential and is the primary competitive edge of any logistics service provider.

28. By utilizing a team approach to providing services, including the collective knowledge and information related to West Plains customers; their daily, monthly or annual needs for freight services; historical charges for such services; the typical length of the hauls; the preferred carriers for each customer; and other similar critical proprietary and confidential information highly relevant to the provision of freight services, the Individual Defendants shared West Plains' confidential and proprietary customer and contractor information with each other in a cooperative manner to implement dynamic solutions to meet West Plains' customer needs.

29. As part of their employment with West Plains, the Individual Defendants received training and orientation, which included access to West Plains' methods and operations of its business, its trade secrets and confidential information, including information about its customers, customer requirements, customer background data, and customer needs (including quantity of resources and location of resources needed

7

by customers, as well as how frequently customer need arises); West Plains' pricing process and pricing rates; West Plains' driver database; West Plains' unique technical policies and procedures by which brokers provide most cost effective services for customers and contract carriers; West Plains' marketing strategies; and other confidential information.

30.    In addition to servicing existing customers, it was the Individual Defendants' job responsibility, among others, to pursue prospective customers, to make sales calls at a frequency that would place West Plains in a preferred position with customers and prospective customers, and to develop and maintain customer relationships.

31.    The Individual Defendants, along with several other West Plains employees, were assigned to serve existing customers and develop new customers in a team approach.  West Plains invested substantial resources, both in terms of the time of its management and staff and out-of-pocket costs, to maintain and develop customers.

## Defendants Were Provided With
## Confidential And Trade Secret Information

32.    In order to obtain, maintain and service customers, the Individual Defendants utilized West Plains' resources and information, including information about West Plains' customers and customer needs (such as quantity of resources and location of resources needed by customers), historical sales and hauls for West Plains' customers, pricing process and pricing rates, vendor database with information specific to West Plains' history with the vendors, and other confidential information in the course of their employment. All of this information derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by

proper means by, other persons who can obtain economic value from its disclosure or use.

33. The Individual Defendants had access to, and presently possess confidential and trade secret information belonging to West Plains regarding pricing and service information for West Plains customers for whom West Plains provided brokerage, risk management, transportation, and other freight logistics services. The Individual Defendants likewise had access to confidential and proprietary information related to each of the drivers or vendors who provided freight or carrier services for West Plains and its customers. But for their employment with West Plains, the Individual Defendants would not have had access to said information.

34. As a condition of their continued employment with West Plains, West Plains required the Individual Defendants to safeguard its confidential and proprietary information, both during and after their employment with West Plains and to avoid conflicts of interest with the Company.

35. The Individual Defendants agreed to abide by West Plains' Confidential Company Information Policy and Conflict of Interest and Business Ethics Policy.

36. Defendants' knowledge of West Plains' confidential and trade secret information gives them an unfair competitive advantage now that the Individual Defendants have left West Plains. It allows Defendants to target West Plains' pricing and services to its customers in such a way as to maximize their ability to lure away West Plains' customers.

37.     West Plains has taken reasonable measures to protect its trade secrets, confidential information, and proprietary information through its use of policies and internal practices.

38.     Prior to providing notice of their resignation of employment with West Plains, the Individual Defendants had the opportunity to copy and remove West Plains' files and materials relating to existing customers. Moreover, by virtue of their ongoing relationships with West Plains' customers, the Individual Defendants have intrinsic knowledge of West Plains' confidential and proprietary information.   Defendants' acquisition of such information would damage West Plains' relationships with its customers and provide Defendants with an unfair advantage in soliciting business from those customers.

39.     The Individual Defendants controlled almost all of the freight logistics sales and services provided by West Plains to its customers, and upon information and belief, took the steps necessary to transfer substantially all of West Plain's freight logistics customers to Retzlaff both during and after their employment with West Plains.

40.     From documents reviewed by West Plains management, it appears as though the Individual Defendants ceased to book business on behalf of West Plains beyond approximately February 5, 2013, so that West Plains customers would be free to contract with Retzlaff upon the Individual Defendants' move to Retzlaff.

41.     Some Individual Defendants set the effective dates of their resignations through February 13, 2013, in order to settle all business they had booked through February 13, 2013.

**Defendants' Notice of Resignation**

42.    Individual Defendants terminated their employment or provided notice of their intent to terminate their employment with West Plains on February 5, 2013, in a concerted and coordinated manner that was intended to cause harm to West Plains and minimize West Plains' ability to prevent Defendants from causing irreparable harm to its business relationships.

43.    By terminating their employment or providing notice of their intent to terminate their employment in concert, the Individual Defendants knowingly left West Plains with the imminent prospect of having minimal staff in its Manning, Iowa office and minimal staff in its Omaha, Nebraska office.

44.    Defendants Needham, T. Danner, and R. Danner terminated their employment with West Plains on February 5, 2013.

45.    Upon information and belief, Defendants Needham, T. Danner, and R. Danner began employment with Retzlaff upon terminating their employment with West Plains.

46.    Defendants May, Bradley, Rhone, Konecky, Scholting, and Waggoner provided notice to West Plains on February 5, 2013 of their intent to terminate their employment with West Plains, which termination of employment would become effective sometime during the following two weeks.

47.    On February 5, 2013, after receiving notices of Defendants May, Rhone, Konecky, and Waggoner's intent to terminate their employment, West Plains requested that Defendants May, Rhone, Konecky, and Waggoner return certain West Plains property, including keys and telephones. West Plains informed Defendants May, Rhone,

Konecky, and Waggoner that they were free to leave for that day. West Plains did so in order to protect its proprietary information and to determine and facilitate an appropriate course of action to enable it to continue to provide services to its customers.

48.   Defendants May, Rhone, Konecky, Scholting, and Waggoner's employment was not terminated by West Plains on February 5, 2013. Because neither West Plains nor Defendants May, Rhone, Konecky, Scholting, or Waggoner had terminated employment, Defendants May, Rhone, Konecky, Scholting, and Waggoner remained West Plains employees.

49.   Upon information and belief, while still employed by West Plains, Defendants May, Rhone, Konecky, and Waggoner performed work on behalf of Retzlaff.

50.   Prior to terminating or providing notice of their intent to terminate their employment with West Plains on February 5, 2013, Individual Defendants communicated with each other and with Wells, acting individually and on behalf of Retzlaff, regarding prospective employment at Retzlaff and soliciting West Plains customers on behalf of Retzlaff.

51.   Prior to terminating or providing notice of their intent to terminate their employment with West Plains on February 5, 2013, at least one Individual Defendant communicated with at least one West Plains' customer regarding providing services to that customer on behalf of Retzlaff after the Individual Defendants' resignation from West Plains.

52.   Prior to terminating or providing notice of their intent to terminate their employment with West Plains on February 5, 2013, at least one Individual Defendant

deleted or attempted to delete numerous e-mails and other documentation belonging to West Plains from West Plains' computer systems.

53.     Upon information and belief, in their employment with Retzlaff, Individual Defendants use the same team approach to providing freight logistic brokering services that they had used while employed by West Plains, including using the proprietary information obtained from West Plains.

### Defendants' Solicitation of Customers

54.     The Individual Defendants have taken positions with Defendant Retzlaff for the purpose of soliciting and servicing West Plains' customers on behalf of and for the economic benefit of Retzlaff, Wells, and themselves.

55.     Upon information and belief, the Individual Defendants have already solicited customers they serviced while at West Plains on behalf of Retzlaff. With the confidential and proprietary information that they gained through their employment at West Plains, Individual Defendants have the ability to induce virtually all of West Plains' customers to move most, if not all, of their business to Retzlaff.

56.     The Individual Defendants solicited West Plains' customers while they were employees of West Plains for their own accounts and for the account of Retzlaff without West Plains' consent.

### Absent An Injunction, West Plains Has And Will Continue To Suffer Injury That Cannot Be Measured Or Remedied In Monetary Terms

57.     The profit generated from the West Plains customers formerly serviced by the Individual Defendants is an estimated $700,000 annually.

58.     The Individual Defendants enjoy a number of distinct competitive advantages because of their former employment with West Plains. They are able to put

West Plains at a competitive disadvantage because they left the West Plains Manning, Iowa office with only one staff member and have significantly depleted the Omaha, Nebraska office; they have knowledge of confidential and trade secret requirements, pricing and proposal information as well as the identities of avenues for market opportunities not otherwise known but for their employment with West Plains.

59.     West Plains seeks to enjoin Defendants from misappropriating customer and contractor relationships and goodwill developed at West Plains' expense, as authorized by, inter alia, Neb. Rev. Stat. § 87-503(a).  By their actions, Defendants seek to obtain substantial amounts of sales and service opportunities related to the freight logistics services business without making the substantial investment of human resources and capital otherwise made by those competitors who act legitimately in the marketplace.

60.     West Plains seeks to enjoin the Individual Defendants from utilizing and/or disclosing confidential information that gives them an unfair trade advantage and violates the Nebraska Trade Secrets Act and Nebraska common law.

61.     Unless Defendants are enjoined from soliciting or accepting business from West Plains' customers and contractors, the damage to West Plains' business will be irreparable. Defendants have already stolen, or have the ability to steal, all of West Plains' customers, contractors, business strategies, methodologies and goodwill built over many years. Moreover, the harm caused by Defendants' unlawful actions and destruction of West Plains' entire business operation will not be readily measurable or compensable in monetary terms.

14

62.     A temporary injunction enforcing Defendants' obligation to protect confidential information and trade secrets is necessary.  If several months pass before a hearing on the merits, Defendants will have the opportunity to misappropriate West Plains' investment in its customer and contractor relationships and its trade secrets, and West Plains will be unable to prevent such misappropriation.

63.     West Plains has no adequate remedy at law for Defendants' interference with its business, its solicitation of customers and theft of its proprietary and confidential information. There is no satisfactory method of quantifying the loss of business, loss of goodwill and disruption caused by Defendants. Unless Defendants are enjoined from misappropriating confidential information for purposes of unfairly competing with West Plains and enjoined from soliciting and serving customers and contractors obtained through a breach of the duty of loyalty, Defendants will continue to cause West Plains damage that cannot be fully measured and for which West Plains cannot be compensated in monetary terms.

64.     By virtue of the foregoing, West Plains has demonstrated a likelihood of success on the merits.

65.     Unless Defendants are temporarily restrained and are preliminarily and permanently enjoined from the foregoing conduct, West Plains will be irreparably harmed by:

> (a)     disclosure of trade secrets and other confidential information which is solely the property of West Plains;
>
> (b)     economic loss; loss of its goodwill and customer and contractor relations, cultivated as a result of West Plains' substantial

resources in terms of time, management and expense; loss of all or the majority of its business operations, which is unascertainable at this time; and future economic loss, all of which is presently incalculable;

(c)     loss of personnel, continued instability and disruption in its workplace, and destruction of its longstanding reputation in the industry, for which West Plains has no adequate remedy at law.

66.     The damage to West Plains from Defendants' unlawful acts greatly exceeds the harm that would result to Defendants if they were enjoined.

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF**
**NEB. REV. STAT. § 87-504 AGAINST INDIVIDUAL DEFENDANTS**

67.     West Plains realleges paragraphs 1-66 of this Complaint as if fully stated herein.

68.     The Individual Defendants during, and as a result of, their employment with West Plains, acquired, used, and currently possess knowledge of West Plains' confidential information and trade secrets as defined by Neb. Rev. Stat. § 87-502(4).

69.     The confidential information and trade secrets have independent economic value from not being generally known to, or readily ascertainable by, persons outside West Plains who can obtain economic value from its use.

70.     West Plains made, and continues to make, reasonable efforts to maintain the secrecy of these trade secrets.

71.     At least one Individual Defendant has utilized West Plains' trade secrets to transfer business and booking opportunities to Retzlaff and Wells and use such trade secrets for their own benefit in the course of their employment with Retzlaff.

72.     The conduct of Individual Defendants constitutes "misappropriation", as they have disclosed, used, and threatened to disclose and/or use trade secrets of West Plains without West Plains' express or implied consent, for their own benefit and for the benefit of Defendants Retzlaff and Wells. Such use and/or disclosure violates both Neb. Rev. Stat § 87-504 and Nebraska common law principles against misappropriation of trade secrets.

73.     Upon information and belief, the Individual Defendants, as they have in the past, will continue to use and disclose West Plains' trade secrets unless enjoined by the Court.

74.     As the direct and proximate result of the threatened and actual misappropriation, disclosure, and use of West Plains' trade secrets by Defendants, West Plains suffered and continues to suffer immediate injury, harm and damage that cannot be readily measured or remedied by a monetary award, and will continue to suffer irreparable injury, harm and damage unless and until Defendants are restrained and enjoined from their present conduct.

75.     West Plains is entitled to injunctive relief, its actual losses and damages, in addition to such other damages in excess of $75,000 as permitted by Neb. Rev. Stat. § 87-504.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF**
**NEB. REV. STAT. § 87-504 AS AGAINST DEFENDANTS RETZLAFF AND WELLS**

76.    West Plains incorporates and realleges paragraphs 1 through 75 of this Complaint.

77.    Retzlaff and Wells have surreptitiously and deliberately misappropriated, and continue to misappropriate, confidential and trade secret information belonging to West Plains.

78.    Retzlaff and Wells have an obligation to West Plains to not misappropriate trade secrets, confidential and proprietary information belonging to West Plains.

79.    Defendants Retzlaff and Wells' misappropriation and use of West Plains' trade secrets, confidential and proprietary information constitutes a violation of the NebraskaTrade Secrets Act.

80.    As a proximate consequence of Defendants Retzlaff and Wells' conduct, West Plains has suffered and will continue to suffer damages, including the loss of customers and revenue from customers. Defendants Retzlaff and Wells have also injured West Plains in ways that cannot be readily measured or compensated in monetary terms.

**COUNT III**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**
**AS AGAINST ALL DEFENDANTS**

81.    West Plains realleges paragraphs 1-80 of this Complaint as if fully stated herein.

82.    West Plains has had longstanding business relationships with all customers formerly serviced by the Individual Defendants.

18

83.     Defendants knew of the business relationships between West Plains and its customers.

84.     Defendants have intentionally interfered with West Plains' existing and prospective business relationships with its customers, without justification.

85.     Defendants' conduct has caused and will continue to cause West Plains damage in the form of lost goodwill and revenue and in ways that cannot be readily measured or compensated in monetary terms.

86.     Defendants' conduct has caused injury to West Plains such that it is entitled to damages under Nebraska law.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONSHIPS**
**AS AGAINST DEFENDANTS REZTLAFF AND WELLS**

87.     West Plains realleges paragraphs 1-86 of this Complaint as if fully stated herein.

88.     West Plains has or has had employment relationships with all Individual Defendants.

89.     Defendants Retzlaff and Wells knew of the employment relationships between West Plains and Individual Defendants.

90.     Defendants Retzlaff and Wells have intentionally interfered with West Plains' existing employment relationships with Individual Defendants, without justification.

91.     Defendants Retzlaff and Wells' conduct has caused and will continue to cause West Plains damage in the form of lost goodwill and revenue and in ways that cannot be readily measured or compensated in monetary terms.

92.     Defendants Retzlaff and Wells' conduct has caused injury to West Plains such that it is entitled to damages under Nebraska law.

**COUNT V**
**BREACH OF DUTY OF LOYALTY**
**AS AGAINST THE INDIVIDUAL DEFENDANTS**

93.     West Plains realleges paragraphs 1-92 of this Complaint as if fully stated herein.

94.     The Individual Defendants were entrusted by West Plains to transact business and to service West Plains' customers for West Plains and for the account of West Plains.

95.     The Individual Defendants owed West Plains a duty to maintain its confidential information, its proprietary information, and its trade secrets.

96.     The Individual Defendants owed West Plains a duty of loyalty as employees and former employees of West Plains.

97.     The Individual Defendants solicited and intend to solicit West Plains' customers for Retzlaff while they were employed by West Plains.

98.     The Individual Defendants engaged in business directly competitive to West Plains while still employed by West Plains.

99.     By this, and other conduct, including misappropriating West Plains' trade secrets, confidential and proprietary information; accessing and misappropriating records, data, and information belonging to West Plains prior to their resignations; and inducing employees and customers to leave West Plains and transfer their business to Retzlaff, Individual Defendants have breached the duties owed to West Plains.

100.   West Plains has been damaged by the Individual Defendants' breach of their duties in an amount in excess of $75,000. The Individual Defendants have also injured West Plains in ways that cannot be readily measured or compensated in monetary terms.

## COUNT VI
## CONSPIRACY — AS AGAINST ALL DEFENDANTS

101.   West Plains incorporates and realleges paragraphs 1 through 100 of this Complaint.

102.   Defendants conspired among themselves to willfully and maliciously interfere with West Plains' business operations, customer relationships and future viability to inflict injury to West Plains.

103.   Defendants were aware of the conspiracy and their participation in it.

104.   Individual Defendants solicited West Plains customers while they were West Plains employees and induced them to transfer their business from West Plains to Retzlaff and Wells upon the Individual Defendants' resignations in furtherance of the conspiracy.

105.   As a result of the conspiracy, West Plains has suffered and will continue to suffer damages, including the loss of customers and revenue from customers, as well as harm that cannot be readily measured or compensated in monetary terms.

106.   Defendants each are liable for all damages resulting from the conspiracy.

## COUNT VII
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
## AS AGAINST DEFENDANT NEEDHAM

107.   West Plains incorporates and realleges paragraphs 1 through 106 of this Complaint.

108.    West Plains' computers, software, servers, and  technological devices are used to facilitate services to customers in interstate commerce.

109.    Defendant Needham intentionally exceeded his authorization to access West Plains' computers to obtain information from West Plains' computers for Retzlaff and his own personal benefit.

110.    Defendant Needham intentionally accessed West Plains' computers without authorization and deleted or attempted to delete e-mails and documentation belonging to West Plains.

111.    Such conduct caused damage and loss to West Plains in the form of deleted documentation and cost of time and expense exerted to retrieve deleted documentation.

112.    Such losses aggregate at least $5,000 in value.

## **REQUEST FOR RELIEF**

Wherefore, West Plains requests the following relief:

1.    An Order:

    (a)    Pursuant to Fed. R. Civ. P. 65 and Neb. Rev. Stat. § 87-503, temporarily restraining and preliminarily and permanently enjoining Defendants and all persons and entities acting in concert with them, including any officers, employees, agents or representatives of Retzlaff, from soliciting, diverting, accepting, or taking away from West Plains any individual, account, customer, contractor, company, partnership or any other

customer to whom the Individual Defendants rendered services preceding the termination of their employment with West Plains;

(b)     Temporarily restraining and preliminarily and permanently enjoining Defendants, and all persons and entities acting in concert with them, including any officers, employees, agents or representatives of Retzlaff, from soliciting or influencing or persuading, or attempting to influence or persuade, other employees of West Plains to leave the employ of West Plains;

(c)     Temporarily restraining and preliminarily and permanently enjoining Defendants and all persons and entities acting in concert with them, including any officers, employees, agents or representatives of Retzlaff, from any further misappropriation, use and/or disclosure of trade secrets or confidential information belonging to West Plains;

(d)     Temporarily restraining and preliminarily and permanently enjoining Defendants and all persons and entities acting in concert with them, including any officers, employees, agents or representatives of Retzlaff, from any further misappropriation, use and/or disclosure of trade secrets or confidential information belonging to West Plains, including, but not limited to, the solicitation of, and/or continuation of, business relationships with West Plains customers formerly serviced by Individual

Defendants or based on knowledge of West Plains' trade secrets and/or confidential information; and

(e)     Requiring all Defendants and all persons or entities acting in concert with Defendants, to immediately return to West Plains all original records or documents and any copies in whatever form, of West Plains' confidential information.

2.     An award of compensatory damages, in an amount to be determined at trial, for Defendants' willful, malicious and unlawful actions against West Plains;

3.     An award of attorneys' fees; and

4.     Such other and further relief as the Court deems just and proper, together with interest, costs, attorneys' fees, and disbursements incurred in undertaking this action.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues raised by this Complaint and hereby provides notice to Defendant of such.

Dated: February 8, 2013

WEST PLAINS, L.L.C.,
Defendant.

BY:  /s/Paul M. Shotkoski _____
      Paul M. Shotkoski, #20873
      Kathryn A. Dittrick, #23513
      Sarah L. McGill, #24790
      FRASER STRYKER PC LLO
      500 Energy Plaza

409 South 17th Street
Omaha, Nebraska  68102-2663
(402) 341-6000
pshotkoski@fraserstryker.com
kdittrick@fraserstryker.com
smcgill@fraserstryker.com
ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

WEST PLAINS, L.L.C. d/b/a CT FREIGHT )   CASE NO. _____
COMPANY,                             )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )
                                     )          VERIFICATION OF
RETZLAFF GRAIN COMPANY,              )           RON B. GILLIS
INCORPORATED d/b/a RFG LOGISTICS, )
BRYCE WELLS, JEFFREY BRADLEY,        )
THOMAS DANNER, REBECCA DANNER, )
JODY MAY, CHAD NEEDHAM, TODD         )
PAYZANT, SAMANTHA RHONE,             )
CRYSTAL KONECKY ,CINDY               )
SCHOLTING AND DREW WAGGONER          )
                                     )
            Defendants.              )

STATE OF NEBRASKA   )
                    ) SS.
COUNTY OF DOUGLAS   )

        RON B. GILLIS, being first duly sworn deposes and states as follows:

        The matters alleged in the Complaint and Jury Demand are true to the best

knowledge, information, and belief of the undersigned officer.

        Dated this _08_ day of February, 2013.


                                        _Ron B Gillis_____
                                        Ron B. Gillis

SUBSCRIBED AND SWORN to before me this _8_ day of February, 2013.

_Sharon Mize_____
Notary Public

GENERAL NOTARY - State of Nebraska
SHARON MIZE
My Comm. Exp. Oct. 28, 2014

My Commission expires: _10/28/2014_