IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WEST PLAINS, L.L.C.,<br><br>Plaintiff,<br><br>vs.<br><br>RETZLAFF GRAIN COMPANY INCORPORATED, BRYCE WELLS, JEFFREY BRADLEY, THOMAS DANNER, REBECCA DANNER, JODY MAY, CHAD NEEDHAM, TODD PAYZANT, SAMANTHA RHONE, CRYSTAL KONECKY, CINDY SCHOLTING, DREW WAGGONER,<br><br>Defendants. | **CASE NO. 8:13CV47**<br><br>**MEMORANDUM AND TEMPORARY RESTRAINING ORDER** |

This matter is before the Court on the Plaintiff's Motion for Temporary Restraining Order (Filing No. 5). Having considered the Plaintiff's brief and evidence, and arguments heard on February 11, 2013, on behalf of Plaintiff and on behalf of Defendant Retzlaff Grain Company Incorporated d/b/a RFG Logistics ("RFG Logistics") and Defendant Bryce Wells, the Court will grant the Plaintiff's Motion.

**PROCEDURAL HISTORY**

Plaintiff West Plains, L.L.C. ("West Plains") asserts seven causes of action against the Defendants: (1) misappropriation of trade secrets in violation of Neb. Rev. Stat. § 87-504 against the Individual Defendants; (2) misappropriation of trade secrets in violation of Neb. Rev. Stat. § 87-504 against Defendants Retzlaff and Wells; (3) tortious interference with business relationships against all Defendants; (4) tortious interference with employment relationships against Defendants Retzlaff and Wells; (5) breach of the duty of loyalty against the Individual Defendants; (6) conspiracy against all

Defendants; and (7) violation of the computer fraud and abuse act, 18 U.S.C. § 1030, against Defendant Needham.  West Plains generally seeks to enjoin the Defendants from soliciting its clients or using its confidential information and trade secrets, and requests that the Defendants be required to return to West Plains any documentation that contains its confidential information.

West Plains filed its Complaint (Filing No. 1) on February 8, 2013, and its Motion for Temporary Restraining Order (Filing No. 5) on February 11, 2013.  Counsel for West Plains submitted an affidavit in support of its Motion, describing West Plains' efforts to notify the Motion.  (Filing No. 9-11.)  These efforts included emails and hand delivery of the applicable pleadings, and phone conversations with Michael Peterson, who appeared at the hearing on behalf of Defendant RFG Logistics and Defendant Bryce Wells.  (Filing No. 9-11 ¶ 3, 4.)  Counsel for West Plains also arranged for copies of the pleadings to be delivered to RFG Logistics because West Plains believes each of the individually named Defendants is employed there.  (Filing No. 9-11 ¶ 5.)

**FACTUAL BACKGROUND**

The following facts are based on the evidence submitted by West Plains. Defendants did not present any evidence but will have an opportunity to do so at the hearing on West Plains' Motion for Preliminary Injunction.  West Plains is a commodity trading business headquartered in Kansas City, Missouri.  (Filing No. 9-1, Affidavit of Ron Gillis, ¶ 3.)  In March 2012, West Plains purchased the assets of CT Freight Services ("CT Freight") from West Plains CO ("WPCO").  (*Id*. ¶ 3.)  Defendant Bryce Wells owned WPCO at the time of the asset purchase.  (*Id*. ¶ 5.)  After the purchase, West Plains obtained all the assets and intellectual property of WCPO, including trade

2

secrets, confidential information, and goodwill. (*Id.* ¶ 5.) After the asset purchase, West Plains operated its freight logistics and brokerage services division using the CT Freight trade name. (*Id.*) West Plains also hired many of WPCO's former employees, including Defendants Jeffrey Bradley, Thomas Danner, Rebecca Danner, Jody May, Chad Needham, Todd Payzant, Crystal Konecky, Samatha Rhone, Cindy Scholting and Drew Waggoner (the "Individual Defendants"). (*Id.* ¶¶ 7, 8.) The Individual Defendants composed 75% of CT Freight's brokers and support staff. (*Id.* ¶¶ 8, 10.)

CT Freight's business as a freight logistics brokerage depends on special relationships maintained by the Individual Defendants with CT Freight's customers and contract carriers, and the Individual Defendants' special knowledge about such customers and carriers. (*Id.* ¶ 4.) These relationships depend on the use of confidential information and trade secrets such as customer needs (e.g. quantity of resources and location of resources needed by customers; and customer contact personnel and their corresponding facsimile numbers, telephone numbers, or email contact information); pricing processes and rates; driver databases and/or spreadsheets and information contained therein or derived therefrom; proposals made or planned by West Plains for such customers; and technical analyses or other data provided by West Plains for use by Individual Defendants in servicing customers and contract carriers (collectively the "Confidential Information"). (*Id.* ¶¶ 14, 32; *see also* Filing No. 5 at 2.) Using this Confidential Information, CT Freight generated $1,715,000 in gross profit for West Plains since the asset purchase in March 2012. (*Id.* ¶ 16.) West Plains states that it required its employees to adhere to a confidential information policy, and its employees

agreed through the employee handbook to refrain from working for competitors while employed with West Plains.  (*Id.* ¶ 15; Filing No. 9-7.)

On February 5, 2013, each of the Individual Defendants submitted their resignations to West Plains.  (Filing No. 9-1 ¶ 17.)  The Individual Defendants' departure dates were staggered, with the last resignation scheduled to take effect on February 13, 2013.  (*Id.*)  West Plains discovered through a search of its company email database that Individual Defendants stopped booking loads for CT Freight customers that were scheduled to be shipped after February 13, 2013, and that Individual Defendants were planning their departure while still employed by West Plains.  (*Id.* ¶¶ 21, 22, 23; Filing No. 9-3.)  Individual Defendants, upon information and belief, each resigned to accept employment with RFG Logistics in similar capacities to those held while they were employed at West Plains.  (Filing No. 9-1 ¶ 18.)  RFG Logistics is a new[1] brokerage company, formed by Defendant Wells.  (*Id.*)

The evidence submitted demonstrates that at least one of the Individual Defendants, Chad Needham, attempted to erase a block of emails from his computer.  (*Id.* ¶ 21.)  In an email dated January 5, 2013, from Defendant Wells to Defendants Danner, Scholting, and Needham, Wells referenced several matters he considered important to the transition, including a "Data Dump to capture the old West Plains Co. information."  (Filing No. 9-9 at 7-8.)

Evidence also demonstrates that at least one Defendant sent a copy of all contact information of contract carriers used by CT Freight to his personal email

---

[1] Counsel for RFG Logistics appeared at the hearing held on February 11, 2013, and conceded that RFG Logistics was a newly formed company.

account. (Filing No. 9-4.) Additionally, Defendant Payzant sent an email to Defendants Danner and Bradley on January 17, 2013, with a spreadsheet attachment of customer hauling rates. (Filing No. 9-1 ¶ 24; Filing No. 9-5.) Additional evidence shows that Defendants Payzant and Konecky sent emails containing customer contact information to their personal email addresses shortly before submitting their resignations. (Filing No. 9-6.) West Plains also states that there is no business reason why a West Plains employee would need to send confidential information to his or her personal email account. (Filing No. 9-1 ¶ 24.) West Plains considers this to be proprietary information because freight brokers cannot arrange for loads without carrier information. (Filing No. 9-1 ¶ 23.) West Plains continues to investigate the nature of the information transferred by the Individual Defendants, including information concerning customer load inquiries for deliveries in the near future. (*Id.* ¶ 34.)

## STANDARD

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), when determining whether to issue a temporary restraining order. *See S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (approving the use of *Dataphase* factors for analyzing a TRO motion). Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase*, 640 F.2d at 114. "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). The movant bears the burden of establishing the propriety

5

of the TRO. *See Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011).

## DISCUSSION

### I. Threat of Irreparable Harm

West Plains argues that there is a threat of irreparable harm because, absent the granting of a TRO, the Defendants will continue to use its Confidential Information to lure away its clients. West Plains contends that the Defendants' continued use of its trade secrets to lure away its clients will result in a loss of business and customer goodwill. *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (internal quotation marks omitted) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury. . . . Harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars."). Although West Plains may seek economic damages, under the present circumstances, the amount of damages resulting from the use of West Plains' Confidential Information would be difficult, if not impossible, to ascertain with any degree of certainty. While West Plains continues to investigate the nature of the information transferred by the Defendants, the evidence indicates that, prior to their resignations, Individual Defendants were using West Plains' Confidential Information to the detriment of West Plains and to the benefit of RFG Logistics. Accordingly, the supporting evidence indicates that West Plains has demonstrated that immediate and irreparable injury, loss, or damage will result to West Plains unless a TRO is issued in some form.

## II. Likelihood of Success on the Merits

West Plains has submitted sufficient evidence indicate a likelihood of success on the merits, at least with regard to its misappropriation claims. To succeed on its misappropriation of trade secrets claim, West Plains must prove:

> (1) the existence of a trade secret . . . , (2) the value and importance of the trade secret to [West Plains] in the conduct of [its] business, (3) [West Plains]'s right by reason of discovery or ownership to the use and enjoyment of the secret, and (4) the communication of the secret to the employee while he was employed in a position of trust and confidence and under circumstances making it inequitable and unjust for him to disclose it to others or to use it himself to the employer's prejudice.

*Softchoice Corp. v. MacKenzie*, 636 F. Supp. 2d 927, 936-37 (D. Neb. 2009) (citing *Richdale Dev. Co. v. McNeil Co.,* 508 N.W.2d 853 (Neb. 1993)). The Nebraska Trade Secrets Act defines a "trade secret" as:

> information . . . that:
>
> (a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Neb. Rev. Stat. § 87-502(4). Under Nebraska law, "[m]isappropriation mean[s] . . . [d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]" Neb. Rev. Stat. § 87-502(2)(b)(ii)(C). The evidence presented at the hearing indicates that the information included in the "Data Dump" had independent economic value, was acquired through

7

the efforts of West Plains, and was maintained as confidential by West Plains. The evidence also indicates that Individual Defendants may have disclosed this information despite their duty to keep it confidential, at least while employed by West Plains. Accordingly, West Plains has met its burden of demonstrating a likelihood of success on the merits with respect to the issue of misappropriation of trade secrets.

### III.  Balance of Hardships

West Plains argues that the balance of hardships weighs in its favor because, absent an injunction, it is likely to suffer irreparable harm, whereas granting an injunction would not prevent the Defendants from working in the freight logistics business. West Plains argues that a TRO would only prevent the Defendants from engaging in unfair competition by using West Plains' trade secrets and confidential information. At the hearing on West Plains' Motion, counsel for Defendants Wells and RFG Logistics stated that a TRO would prevent RFG Logistics from honoring existing commitments to its own freight customers. In weighing the hardships, the Court concludes that any harm to Defendants resulting from unfair competition would not outweigh the hardships to West Plains. Further, the Court will order security in the amount of $25,000.00 to pay the costs and damages sustained by Defendants if they are found to have been wrongfully enjoined.

### IV.  Public Interest

West Plains argues that the public interest factor weighs in its favor because the law favors only lawful competition. It also asserts that it would not be in the public interest to reward the Defendants for taking advantage of a former employer's

8

investment. The Court agrees and concludes that a TRO maintaining the status quo so far as possible serves the public interest in this case.

## CONCLUSION

Based on an analysis of the *Dataphase* factors as applied to the evidence submitted by West Plains, the Court finds that a TRO is necessary to preserve the status quo, at least pending the resolution of the preliminary injunction hearing to be held before this Court. The Court also concludes that West Plains has made reasonable efforts to notify Defendants of this Motion, and concludes that a TRO should issue. Accordingly

IT IS ORDERED that West Plains' Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 5) is granted in part, as follows:

1. Defendants Jeffrey Bradley, Thomas Danner, Rebecca Danner, Jody May, Chad Needham, Todd Payzant, Crystal Konecky, Samatha Rhone, Cindy Scholting and Drew Waggoner (the "Individual Defendants") are restrained and enjoined from directly or indirectly soliciting or contacting, with a view to brokering with, servicing, contracting with, or accepting business from any person, firm, business, customer, client, or contractor with whom the Individual Defendants solicited or serviced or otherwise dealt with on behalf of West Plains.

2. Defendants are restrained and enjoined from directly or indirectly using, disclosing or transmitting for any purpose any confidential information and trade secrets obtained by Individual Defendants during their employment with West Plains, including without limitation, information about customer needs (e.g. quantity of resources and location of resources needed by customers; and customer contact personnel and their

corresponding facsimile numbers, telephone numbers, or email contact information); pricing processes and rates; driver databases and/or spreadsheets and information contained therein or derived therefrom; proposals made or planned by West Plains for such customers; and technical analyses or other data provided by West Plains for use by Individual Defendants in servicing customers and contract carriers (collectively the "Confidential Information").

3.     Defendants and all persons or entities acting in concert with them are restrained and enjoined from destroying, manipulating, or disposing of any data, including Confidential Information, taken from West Plains.

4.     Defendants and all persons or entities acting in concert with them shall immediately return to West Plains all original records or documents and any copies in whatever form or type, that contain Confidential Information belonging to West Plains.

5.     Defendants are restrained and enjoined from directly or indirectly taking freight orders or placing freight orders for brokerage from any person, firm, business, customer, client, or contractor with whom the Individual Defendants solicited or serviced or otherwise dealt with on behalf of West Plains.

6.     This Temporary Restraining Order is issued on February 12, 2013, at 3:20 p.m., and expires on February 26, 2013, at 3:20 p.m., unless earlier amended or vacated.

7.     Plaintiff is instructed to effect service of this Temporary Restraining Order upon Defendants according to Fed. R. Civ. P. 65(d)(2).

8. Plaintiff will remit to the Clerk of Court security in the amount of $25,000.00, that will be paid to Defendants, in whole or part, in the event that Defendants are found to have been wrongfully enjoined.

Dated this 12th day of February, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge