## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **WEST PLAINS, LLC,** | ) | |
| **d/b/a CT FREIGHT COMPANY,** | ) | **Case No. 8:13-CV-00047** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **BRIEF IN SUPPORT OF** |
| | ) | **DEFENDANTS' MOTION IN LIMINE** |
| **RETZLAFF GRAIN COMPANY,** | ) | |
| **INCORPORATED d/b/a RFG LOGISTICS,** | ) | |
| **BRYCE WELLS, JEFFREY BRADLEY,** | ) | |
| **THOMAS DANNER, REBECCA DANNER,** | ) | |
| **JODY MAY, CHAD NEEDHAM,** | ) | |
| **TODD PAYZANT, SAMANTHA RHONE,** | ) | |
| **CRYSTAL KONECKY, CINDY SCHOLTING,** | ) | |
| **AND DREW WAGGONER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Defendants respectfully submit this Brief in Support of their Motion in Limine.

## BACKGROUND

This dispute between competing freight brokerage businesses was filed by Plaintiff West Plains, L.L.C., d/b/a CT Freight Company (herein "West Plains" or "CT Freight"), against Defendants Retzlaff Grain Company, Inc. d/b/a RFG Logistics ("RFG Logistics"), Bryce Wells ("Wells") and Jeffery Bradley, Thomas Danner, Rebecca Danner, Jody May, Chad Needham, Todd Payzant, Samantha Rhone, Crystal Konecky, Cindy Scholting and Drew Waggoner (collectively as the "Individual Defendants"). West Plains' Complaint (Filing No. 1) alleges the following causes of action against Defendants:

1. <u>Counts I</u> - Misappropriation of Trade Secrets (against all Individual Defendants).

2. <u>Counts II</u> - Misappropriation of Trade Secrets (against Defendants Wells and RFG Logistics).

3.      <u>Count III</u> - Tortious Interference with Business Relationships (against all Defendants).

4.      <u>Count IV</u> - Tortious Interference with employment relationships (against Defendants Wells and RFG Logistics).

5.      <u>Count V</u> - Breach of Duty of Loyalty (against all Individual Defendants).

6.      <u>Count VI</u> - Civil Conspiracy (against all Defendants).

7.      <u>Count VII</u> – Violation of the Computer Fraud and Abuse Act (against Defendant Chad Needham).

In its supplemental Rule 26 disclosures, West Plains refers to the report prepared by its expert, William W. Kenedy, to support its computation and measure of damages in this case. (Affidavit of Patrick M. Flood ("Flood Aff.") ¶3, Exhibit "A", Plaintiff's Supplemental Rule 26 Disclosures, p. 16).  Stated simply, West Plains introduces a theory of damages which it describes as a "total loss of value" approximating the fair market value of the CT Freight division of West Plains at the time the Individual Defendants resigned on February 5, 2013. (Flood Aff. ¶4, Exhibit "B", William W. Kenedy letter to Plaintiff's counsel, pp. 4-5).  Mr. Kenedy opines that the "total loss of value" of CT Freight is $2,131,000.00 as a result of Defendants' actions. (<u>Id</u>.).  Because West Plains owns all the assets utilized by CT Freight and does not maintain a separate balance sheet for CT Freight, Mr. Kenedy relied solely on CT Freight's historical financial information to arrive at the damages suffered by West Plains. (Flood Aff. ¶4, Exhibit "B", William W. Kenedy letter to Plaintiff's counsel, p. 5; Flood Aff. ¶5, Exhibit "C", Appraisal Report, p. 10).

In addition, West Plains also seeks to recover lost profit damages totaling $330,000.00.  West Plains' lost profit damages were calculated from the time the Individual Defendants resigned on February 5, 2013 until October of 2013 when CT Freight allegedly abandoned the bulk/hopper

freight line of business that it alleges was the primary source of income. (Flood Aff. ¶4, Exhibit "B", William W. Kenedy letter to Plaintiff's counsel, pp. 4-5).  Accordingly, West Plains' claims that is has suffered combined damages totaling $2,461,000.00 as a result of Defendants' actions. (Flood Aff. ¶4, Exhibit "B", William W. Kenedy letter to Plaintiff's counsel, p. 5).

Other than its "total loss of value" and lost profit theories of recovery, West Plains' disclosures did not reveal the method of computations for any other elements of damages for the various tort claims asserted in its Complaint, including a computation of damages resulting from the Individual Defendants alleged breach of the duty of loyalty. (Flood Aff. ¶3, Exhibit "A", Plaintiff's Supplemental Rule 26 Disclosures, p. 16).

Plaintiff has asserted a separate claim for damages as a result of Defendant Chad Needham's alleged violation of the Computer Fraud and Abuse Act which is not at issue for purposes of Defendants' Motion in Limine.

## ARGUMENT

## I.   THERE IS NO SUPPORT FOR WEST PLAINS' "TOTAL LOSS OF VALUE" THEORY OF DAMAGES FOR THE CAUSES OF ACTION IN THIS CASE.

While the amount of damages presents a question of fact for a jury, the proper measure of damages is a question of law for this Court to resolve. E-P Intern. Distribution, Inc. v. Sav-Rx, LLC, 2011 WL 1791556, *8 (D. Neb. May 11, 2011), citing Tolliver v. Visiting Nurse Ass'n of Midlands, 278 Neb. 532, 538, 771 N.W.2d 908, 914 (2009).  In this case, West Plains should be precluded from introducing evidence at trial of the "total loss of value" of CT Freight because such evidence is irrelevant to the determination of West Plains' damages for the causes of action alleged in this case.

West Plains has not designated any specific cause of action to which its "total loss of value" theory of damages applies. Nonetheless, West Plains asserts a theory of damages which approximates CT Freight's value as of February 5, 2013 when the Individual Defendants submitted their staggered resignations. The only reported Nebraska case Defendants located addressing damages for the alleged interruption or destruction of a business due to unfair competition is Marsh-Burke Co. v. Yost, 98 Neb. 523, 153 N.W. 573 (1915). In that case, the court held "[t]hat the measure of damages for the interruption or destruction of a going concern is the loss of profits proved to a reasonable degree of certainty." Id., 153 N.W. at 576 (1915).

Defendants acknowledge that West Plains' theory of recovery based upon "total loss of value" or "lost assets" is a theory which has been applied by courts in other jurisdictions, most notably in the State of New York. In New York, lost assets damages and lost profit damages are separate and distinct categories. Schonfeld v. Hilliard, 218 F.3d 164, 176 (2nd Cir. 2000). Under the theory of lost asset damages in New York, a plaintiff must prove that the damages were within the contemplation of the parties at the time they entered into a contract. Id., 218 F.3d at 177, citing Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 496 (2nd Cir. 1995). In this case, West Plains cannot argue that losing its assets was within the contemplation of West Plains and any other party to this case because there is no contract at dispute in this case. West Plains' theory of damages based upon the "total loss of value", a remedy in a contract claim, has no applicability to the causes of action West Plains has asserted in this case.

Furthermore, the CT Freight division of West Plains is still a going concern and was not destroyed or otherwise put out of business. As reflected in the revenue by customer spreadsheets produced in discovery, CT Freight continues to provide freight brokerage services and generate

revenues. (Flood Aff. ¶6, Exhibit "D", CT Freight Revenue by Customer for 2013; Flood Aff. ¶7, Exhibit "E", CT Freight Revenue by Customer for 2014). In addition, CT Freight never abandoned the bulk/hopper line of business in October of 2013 – which Mr. Kenedy assumed in his damages opinion. (See Flood Aff. ¶4, Exhibit "B", William W. Kenedy letter to Plaintiff's counsel, p. 4). According to CT Freight's former V.P. of Operations, Timothy Lukowski, CT Freight elected to expand into different freight markets at the time of his hire in April of 2013, but never abandoned the bulk/hopper line of business. (Flood Aff. ¶8, Ex. "F", Lukowski Depo. pp. 9:24-25; 35:20-36:12; 46:20-47:18; 48:8-49:17). In KMS Restaurant Corp. v. Wendy's Intern. Inc., 194 Fed.Appx. 591 (11th Cir. 2006), the court held that the proper measure of damages for a claim of tortious interference was lost profits where the business was not completely destroyed and cited the following rule:

> [i]f a business is completely destroyed, the proper measure of damages is the market value of the business on the day of the loss. If the business is not completely destroyed, then it may recover lost profits. A business may not recover both lost profits and the market value of the business.

KMS Restaurant Corp., 194 Fed.Appx. at 601 (other citation omitted); See also Blueskygreenland Environmental Solutions, LLC v. 21st Century Planet Fund, LLC, 2014 WL 3667874, *2 (S.D. Fla. July 22, 2014) (holding that proper measure of damages was lost profits and not "total destruction of business" damages because alleged tortious interference did not result in complete destruction of business, but rather, caused the loss of plaintiff to participate as a distributor in a specific market only).

The damages for West Plains' state law misappropriation of trade secrets claims (Counts I and II) are either West Plains' lost profits or Defendants' unjust enrichment, or some combination.

5

Homepride Foods, Inc. v. Johnson, 634 N.W.2d 774, 783-784 (Neb. 2001) (Court declined to decide whether a plaintiff may recover both lost profits and unjust enrichment for the same conduct, but noted that a majority of courts have held that plaintiffs may only recover one or the other). West Plains' third and fourth Counts are for tortious interference with business expectancies and at-will employment relationships. There is no case in Nebraska which holds that the measure of damages is anything resembling the "total loss of value" theory of damages advanced by West Plains. Instead, the measure of damages clearly appears to be lost profits. Triple R Industries, Inc. v. Century Lubricating Oils, Inc., 912 F.2d 234, 238 (8th Cir. 1990) (applying Nebraska law); Racicky v. Farmland Industries, Inc., 328 F.3d 389, 397 (8th Cir. 2003) (applying Nebraska law).

For these reasons, Plaintiff should be precluded from offering evidence of "total loss of value" damages at trial for any of its causes of action.

## II.   WEST PLAINS CANNOT RECOVER BOTH "TOTAL LOSS OF VALUE" DAMAGES AND LOST PROFITS DAMAGES BECAUSE ANY RECOVERY WOULD BE DUPLICATIVE.

According to West Plains' expert, the total losses suffered by CT Freight as a result of Defendants' conduct totals $2,461,000.00. West Plains' damages figure includes both total loss of value of CT Freight as of February 5, 2013 ($2,131,000) and lost profits for the time period of March of 2013 through October of 2013 ($330,000). (Flood Aff. ¶4, Ex. "B", William W. Kenedy letter to Plaintiff's counsel, p. 5). West Plains cannot recover damages for both the total loss of business value and lost profits for the same time period because any recovery would be duplicative. See City of San Antonio v. Guidry, 801 S.W.2d 142, 150 (Tex. App. 1990) (stating that recovery for both lost profits and loss of business value for the same time period would be duplicative); Trailer Ranch, Inc. v. Levine, 523 So.2d 629, 631 (Fla. Ct. App. 1998) ("Recovery for loss of a business venture is to be

6

determined either by lost profits or loss of the business value, but not both."); and <u>KMS Restaurant Corp. v. Wendy's Intern. Inc.,</u> 194 Fed.Appx. 591, 601 (11th Cir. 2006) (citing authority that business may not recover both lost profits and the market value of business).  Accordingly, West Plains should be precluded from offering evidence of both measures of damages and, for the reasons set forth above, West Plains should be limited to any recovery based on lost profits only.

**III.   ANY EVIDENCE SUPPORTING A LOST PROFITS THEORY OF RECOVERY SHOULD BE LIMITED TO THE LOST PROFITS SUFFERED BY THE PLAINTIFF, WEST PLAINS, LLC.**

As an unincorporated division of West Plains, CT Freight is not a recognized legal entity with the capacity to sue or be sued. <u>See e.g.</u>, <u>Western Beef, Inc. v. Compton Inv. Co.,</u> 611 F.2d 587, 590 (5th Cir. 1980) (explaining that an unincorporated division is not a separate legal entity wholly apart from its owner); and <u>Burns & Russel Co. of Baltimore v. Oldcastle, Inc.,</u> 166 F.Supp.2d 432, 440 (D. Md. 2001) (stating that unincorporated divisions do not possess any assets – all assets are owned by the corporation).

As noted in Mr. Kenedy's appraisal report, West Plains owns all the assets utilized by CT Freight and does not maintain a separate balance sheet for CT Freight. (Flood Aff. ¶5, Exhibit "C", Appraisal Report, p. 10). West Plains has not produced any financial information or reports establishing the losses actually sustained by the Plaintiff, West Plains.  Nonetheless, West Plains, as the real party in interest with capacity to sue, is attempting to establish damages by submitting evidence of CT Freight's alleged lost profits only instead of the losses suffered by West Plains as a whole.  Defendants respectfully submit that because CT Freight is a division of West Plains and not the owner of any assets, evidence of CT Freight's lost profits do not reflect the actual losses sustained by West Plains which owns the division. <u>In re Federal-Mogul Global,</u> 411 B.R. 148, 164

7

(Banr. D. De. 2008) (holding that any liabilities arising out of the operation of an unincorporated division must run against the corporation that holds the division). Accordingly, because CT Freight's lost profits are not relevant to establishing damages actually sustained by West Plains as whole, any evidence concerning CT Freight's lost profits should be excluded to the extent the evidence fails to support damages suffered by West Plains, the actual Plaintiff and real party in interest.

## IV. WEST PLAINS SHOULD BE PROHIBITED FROM OFFERING WRITTEN COMMUNICATIONS AND REPORTS OF ITS EXPERT WITNESS.

In its pretrial disclosures, Plaintiff disclosed its intention to offer into evidence the appraisal report prepared by its damages expert, William Kenedy, as well as a letter sent by Mr. Kenedy to Plaintiff's counsel summarizing his opinions. (See Filing No. 149, Plaintiff's Exhibit List, Nos. 186, 187). Copies of Mr. Kenedy's appraisal report and the letter sent to Plaintiff's counsel are attached to the Affidavit of Patrick M. Flood as Exhibits "B" and "C" filed contemporaneously with this Brief.

West Plains should be precluded from offering Mr. Kenedy's report and written communication to Plaintiff's counsel at trial because both documents contain multiple levels of hearsay as well as legal conclusions. For example, both documents cite the affidavit testimony of Ronald Gillis regarding West Plains' alleged trade secret information and Defendants purported "plan of transferring substantially all of CT Freight's hopper freight brokerage business to RFG Logistics." (See e.g. Flood Aff. ¶4, Exhibit "B", William W. Kenedy letter to Plaintiff's counsel, pp 2-4; Flood Aff. ¶5, Exhibit "C", Appraisal Report pp. 7-8). Additionally, the documents are not the best evidence since Mr. Kenedy is expected to testify at trial. See State, Dept. of Roads v. Whitlock,

262 Neb. 615, 618-19, 634 N.W.2d 480, 483-84 (2001) (citing line of Nebraska cases and holding that expert's written appraisal report was inadmissible as hearsay and unfairly prejudicial).  Finally, for the reasons already set forth above, because the "total loss of value" measure of damages utilized by Mr. Kenedy is not appropriate under Nebraska law, his report and letter to Plaintiff's counsel should be excluded.

## V.     ANY RECOVERY FOR BREACH OF THE DUTY OF LOYALTY IS LIMITED TO COMPENSATION RECEIVED BY THE DEFENDANTS DURING ANY PERIOD OF DISLOYALTY.

Other than a computation of damages under its "total loss of value" and lost profits theories (addressed above), West Plains has not disclosed any other theories of damages or methods of computing damages it purportedly seeks to recover in this lawsuit.  For the breach of the duty of loyalty claim, it appears that West Plains intends to hold the Individual Defendants liable for nearly $2.4 million in damages.  Defendants submit that West Plains' claim for breach of the duty of loyalty is limited to recovering compensation paid to an employee during the period of time the employee was alleged to have breached his or her duty of loyalty. Neece v. Severa, 5 Neb.App. 563, 560 N.W.2d 868, 873 (1997) citing Restatement (Second) of Agency, § 469 at 399; See also Design Strategies, Inc. v. Davis, 384 F.Supp.2d 649, 659-66 (S.D. N.Y. 2005) (explaining, in detail, that proper remedy for alleged breach of the duty of loyalty is forfeiture of compensation paid to employee during any period of disloyalty and that requiring forfeiture of all compensation would result in windfall to employer).  However, because West Plains has failed to disclose this theory of recovery or computation of damages for its breach of duty of loyalty claim, it should be precluded from offering evidence of the amount of salary the Individual Defendants earned during any period of alleged disloyalty.

9

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires a party, without awaiting a discovery request, to provide:

> a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying, as under Rule 34, the documents or other evidentiary material, unless privileged or protected from disclosure on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . .

Federal Rule of Civil Procedure 37(c)(1) further provides that a party who fails to provide the information required by Rule 26(a) or (e) will not be allowed to use that information or a witness to supply evidence at a trial "unless the failure was substantially justified or is harmless."  In interpreting these rules, courts have excluded a party from presenting evidence of damages at trial for failure to make proper pre-trial disclosures.  See, e.g., Design Strategies, Inc. v. Davis, 469 F.3d 284, 296 (2nd Cir. 2006) (excluding lost profits); Szusterman v. Amoco Oil Co., 112 Fed. Appx. 130, 131-132 (3rd Cir. 2004) (excluding evidence of any damages); and KW Plastics v. U.S. Can Co., 131 F.Supp.2d 1289, 1295-1296 (M.D.  Ala. 2001) (excluding unjust enrichment damages).

Here, other than West Plains' disclosure of its method of computing damages under its "total loss of value" and lost profits theories (addressed above), West Plains has not disclosed its method of computing damages on any other theory.  For this reason, West Plains should be prevented from offering at trial any evidence of those damages which have not been disclosed.

## VI.   WEST PLAINS MAY NOT RECOVER LOST PROFIT DAMAGES AFTER THE TEMPORARY INJUNCTION (FILING No. 45) EXPIRED ON APRIL 5, 2015.

On February 26, 2013, this Court entered a Temporary Injunction Order enjoining the Defendants from accepting any business or soliciting any customers with whom the Individual Defendants serviced while employed by West Plains and to return any alleged confidential

information belonging to West Plains. (Filing No. 45). Mindful of the fact the Defendants were not bound by any post-employment agreements, this Court fashioned a remedy which limited the duration of the injunctive period until April 5, 2013 and stated as follows:

> The Court also recognizes that Defendants should not be precluded from competing for CT Freight's customers indefinitely. None of the Defendants was bound under an enforceable non-solicitation or non-competition agreement. Further, it is possible that through their own efforts the Defendants could acquire information to allow them to for business with CT Freight's customers and carriers. The Court concludes that a preliminary injunction with a limited duration of two months from the time of the Individual Defendants departure from CT Freight will preserve the status quo between the parties. This period will allow CT Freight to hire brokers and staff to utilize its Confidential Information and meet its customers' needs on an even playing field. This period will also provide a reasonable period for the Defendants to acquire publicly available information through their own efforts. Thus, the status quo will be preserved by precluding the Defendants from unfairly competing for CT Freight's customers, but not indefinitely foreclosing free competition between the parties. At the expiration of the two-month period, the parties can compete for freight brokerage business on more equitable terms.

(Filing No 45, pp. 18-19).

West Plains should not be allowed to present evidence of lost profit damages after April 5, 2013 when the Temporary Injunction expired under any theory of damages presented by West Plains. In Aon Consulting, Inc. v. Midlands Financial Benefits, Inc., 275 Neb. 642, 748 N.W.2d 626 (2008), the Nebraska Supreme Court affirmed the trial court's determination that evidence regarding lost profit damages after a 2 year non-solicitation agreement expired would be speculative and irrelevant, and therefore, inadmissible. Id. at 655-56, 748 N.W.2d at 639-40. The Court relied on the fact that the former employee would have been free to solicit customers after the 2 year restrictive period expired and that customers may change brokers at any time they choose, without notice. Id. The

11

rationale applied in the <u>Aon</u> case should also apply here because this Court's Temporary Injunction order was the equivalent of a non-competition and/or non-solicitation agreement designed to preserve the status quo until the injunctive period expired at which time Defendants were free to compete.  If Defendants are held liable for lost profit damages after the injunctive period expired on April 5, 2013, they would effectively be held liable for what this Court already granted them permission to do – lawfully compete.  <u>See</u>, <u>Hanger Prosthetics & Orthotics East, Inc. v. Kitchens</u>, 280 S.W.3d 192 (Tenn. App. 2008) (noting that trial court properly determined that time period for measuring lost profit damages was confined to period of temporary injunction); <u>ABC Trans. Nat., Inc. v. Aeronautics Forwarders, Inc.</u>, 413 N.E.2d 1299, 1312-1313 (Ill.App. 1980) (holding that freight company's lost profit damages resulting from massive departure of workforce and other tortious activity of corporate officers was limited to 30 days because defendants competitive edge lasted for only a short period of time, defendants were not subject to restrictive covenants, and customers were free to follow personnel from one employer to another).

Furthermore, it has been held that: "Once the defendant has discovered, or would have discovered, the trade secret without the misappropriation, any lost profits from that time forward are not caused by the Defendants wrongful acts." <u>Sokol Crystal Products, Inc. v. DSC Communications Corp.</u>, 15 F.3d 1427, 1433 (7th Cir. 1994).  Comment h to the Restatement (Third) of Unfair Competition, §45, sets forth the monetary relief available in trade secrets cases and states, in part, as follows:

> *h.   Limitation on monetary relief*.  Monetary remedies, whether measured by the loss to the plaintiff or the gain to the defendant, are appropriate only for the period of time that the information would have remained available to the defendant in the absence of the appropriation.  This period may be measured by the time it would

> have taken the defendant to obtain the information by proper means such as reverse engineering or independent development…Monetary relief based on the defendant's use of the information after the loss of secrecy is therefore appropriate only to the extent necessary to remedy a head start or other unfair advantage attributable to the defendant's prior access to the information.

In this case, any perceived head start or unfair advantage gained by the Defendants was remedied by the imposition of a two (2) month long injunction. Because Defendants were free to compete for the very same customers serviced by CT Freight after the Temporary Injunction expired, any lost profit damages suffered by CT Freight should be limited to the time period from when the Individual Defendants submitted their staggered resignations on February 5, 2013 until April 5, 2013 when the injunction was lifted. Any evidence of lost profit damages after April 5, 2013 should be prohibited under any of the causes of actions asserted by West Plains because it is irrelevant and speculative.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants request this Court to enter an Order *in limine* barring Plaintiff from introducing any evidence of the following:

1.      Evidence regarding Plaintiff's theory of damages for its CT Freight division which it describes as a "total loss of value" theory of damages because is not the appropriate measure of damages for any of the claims asserted in this case;

2.      Evidence supporting Plaintiff's claim for both "total loss of value" damages and lost profits because the recovery, if any, would be duplicative.

3.      Evidence concerning CT Freight's lost profits because CT FreFight is an unincorporated division of West Plains, LLC and not the real party in interest. Any evidence

13

supporting a lost profits theory of recovery should be limited to any lost profits suffered by the Plaintiff, West Plains, LLC.

4.      Any written reports or communications by Plaintiff's expert on damages as such reports and communications are hearsay, contain legal conclusions, are unfairly prejudicial, and not the best evidence available;

5.      Any evidence for "total loss of value" or lost profits damages arising out of related to the Individual Defendants alleged breach of duty of loyalty.  Plaintiff may only recover amounts paid to the Individual Defendants during the period of any disloyalty;

6.      Any evidence of damages based upon a theory or computation which Plaintiff has not disclosed; and

7.      Evidence supporting Plaintiff's claim for lost profits after the Temporary Injunction (Filing No. 45) expired on April 5, 2013.

RETZLAFF GRAIN COMPANY,
INCORPORATED d/b/a RFG LOGISTICS, BRYCE
WELLS, JEFFREY BRADLEY,
THOMAS DANNER, REBECCA DANNER,
JODY MAY, CHAD NEEDHAM, TODD
PAYZANT, SAMANTHA RHONE, CRYSTAL
KONECKY, CINDY SCHOLTING, AND
DREW WAGGONER, Defendants


By:/s/Patrick M. Flood
Edward D. Hotz, #11927
Patrick M. Flood, #19042
Michael R. Peterson, #23444
PANSING HOGAN ERNST & BACHMAN LLP
10250 Regency Circle, Suite 300
Omaha, NE 68114
(402) 397-5500
(402) 397-4853 (facsimile)
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of October, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys for Plaintiff:

Paul M. Shotkoski
Kathryn A. Dittrick
Sarah McGill
Fraser Stryker PC LLO
550 Energy Plaza
409 South 17th Street
Omaha, NE 68102


/s/Patrick M. Flood

15