## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WEST PLAINS, LLC, | ) | |
| d/b/a CT FREIGHT COMPANY, | ) | Case No. 8:13-CV-00047 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **BRIEF IN OPPOSITION TO** |
| | ) | **PLAINTIFF'S MOTION IN LIMINE** |
| RETZLAFF GRAIN COMPANY, | ) | |
| INCORPORATED d/b/a RFG LOGISTICS, | ) | |
| BRYCE WELLS, JEFFREY BRADLEY, | ) | |
| THOMAS DANNER, REBECCA DANNER, | ) | |
| JODY MAY, CHAD NEEDHAM, | ) | |
| TODD PAYZANT, SAMANTHA RHONE, | ) | |
| CRYSTAL KONECKY, CINDY SCHOLTING, | ) | |
| AND DREW WAGGONER, | ) | |
| | ) | |
| **Defendants.** | ) | |

Defendants respectfully submit this Brief in Opposition to Plaintiff's Motion in Limine (Filing No. 157).

## INTRODUCTION

In its Motion in Limine, Plaintiff West Plains, LLC, d/b/a CT Freight Company ("West Plains") seeks to exclude evidence or testimony concerning the following matters at trial:

I.      West Plains' financial statements and audit reports;

II.     Various CT Freight employment agreements entered into after February 5, 2013;

III.    Defendants' expert from testifying to matters beyond the scope of his expert report;

IV.     Any documents Defendants did not produce in discovery of this case; and

V.      Information related to West Plains' parent corporation, QuatrA, LLC.

## LAW AND ARGUMENT

A court will exclude evidence on a motion in limine "only when evidence is clearly inadmissible on all potential grounds." Walsh v. Union Pacific Railroad Co., 2007 WL 2226008, *1 (D. Neb. 2007), *quoting* Hawthorne Partners v. AT&T Tech., Inc., 831 F. Supp. 1398, 1400-1401 (N.D. Ill. 1993). The court in Hawthorne Partners explained that:

> This court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds . . .. Unless evidence meets the high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context...Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.

Id., *quoting* Hawthorne Partners, 831 F.Supp. at 1400-1401 (citations omitted). Furthermore, "[e]videntiary rulings made by a trial court during motions in limine are preliminary and may change depending on what actually happens at trial." Id., *quoting* Walzer v. St. Joseph State Hosp., 231 F.3d 1108, 1113 (8th Cir. 2000).

## I.    West Plains' Financial Statements And Audit Reports Are Relevant And Not Unfairly Prejudicial.

According to West Plains, its financial statements and audit reports are not relevant to the damages it allegedly suffered as a result of Defendants' actions. West Plains argues that its damages should only be calculated by looking at the alleged losses sustained by its unincorporated division, CT Freight, which it now describes as "only a small operating division." (Filing No. 158, Plaintiff's Brief in Support of Motion in Limine, p. 3).

2

First, West Plains' financial information is relevant because West Plains is the real party in interest with capacity to sue and recover damages it allegedly sustained. See, e.g., Western Beef, Inc. v. Compton Inv. Co., 611 F.2d 587, 590 (5th Cir. 1980) (explaining that an unincorporated division is not a separate legal entity wholly apart from its owner); Burns & Russel Co. of Baltimore v. Oldcastle, Inc., 166 F.Supp.2d 432, 440 (D. Md. 2001) (stating that unincorporated divisions do not possess any assets – all assets are owned by the corporation); and In re Federal-Mogul Global, 411 B.R. 148, 164 (Bankr. D. De. 2008) (holding that any liabilities arising out of the operation of an unincorporated division must run against the corporation that holds the division). Since West Plains owns all the assets of CT Freight, West Plains' financial statements and audit reports are relevant to prove the actual damages suffered by West Plains and, more importantly, to discredit the methodology utilized by West Plains' expert to calculate damages in this case.

In addition, Defendants expect West Plains to argue that Defendant Bryce Wells ("Wells") specifically targeted the CT Freight division of West Plains because it was the most profitable division and generated substantial revenues for West Plains. West Plains will also likely argue that West Plains, as a whole, suffered financially because of Defendants' actions. For example, in a previous filing with this Court, West Plains advanced the following argument:

> "The CT Freight division was the **crown jewel** for both WPCO [West Plains Company] and West Plains [Plaintiff]. During 2012, the CT Freight division of West Plains generated total revenue in excess of $19,000,000, and net income in excess of $800,000. The CT Freight division was poised to do even better in 2013. For January 2013, CT Freight generated in excess of $1,900,000 of total revenue from its freight brokerage business, with over 80% of that revenue received from its top customers. West Plains' net income from the CT Freight division in January of 2013 alone exceeded $100,000." (emphasis added).

(Filing No. 129, Plaintiff's Brief in Opposition to Defendants' Motion for Partial Summary Judgment, p. 2). As the above makes clear, West Plains placed its financial information and total

sales in issue by accusing Wells and the other Individual Defendants of targeting CT Freight – the alleged "crown jewel" of all West Plains' divisions -- because of its profitability for the company as whole.  Defendants submit that it would be unfairly prejudicial for West Plains to argue or imply at trial that the CT Freight division was the most profitable division of West Plains and targeted by Wells for that reason, yet exclude information contained in West Plains' financial statements and audit reports reflecting West Plains' actual financial results in their entirety, including the fact that West Plains' has annual sales in excess of $600,000,000 and continues to be profitable. (Filing No. 159, Ex. 1 to Declaration of Paul Shotkoski, West Plains' Financial Statement and Audit Report for 2013, p. 4).  As the real party in interest with capacity to sue and recover damages, evidence concerning West Plains' financial affairs, as reflected in its financial statements and audit reports, should be allowed into evidence because it is relevant and not unfairly prejudicial.

## II.    West Plains' Employment Agreements Should Not Be Excluded.

According to West Plains, the employment agreements West Plains executed with employees of the CT Freight division after February 5, 2013 should be excluded because they are irrelevant and improper under Fed. R. of Evid. 407.  West Plains anticipates Defendants offering the employment agreements to show that West Plains should have had similar agreements in place at the CT Freight division to prevent the Individual Defendants alleged "theft of confidential information and customers for a competing business." (Filing No. 158, Plaintiff's Brief in Support of Motion in Limine, pp. 4-5).

Defendants submit that West Plains' employment agreements for the CT Freight division are relevant and admissible at trial for the following reasons:

4

- To prove that CT Freight failed to take reasonable measures to protect the secrecy of any alleged confidential trade secret information;

- To prove that Defendants' solicitation of customers after their resignations on February 5, 2013 was proper and in accord with fair competition;

- To prove CT Freight failed to mitigate its damages by timely hiring replacement brokers; and

- To prove CT Freight did not abandon the bulk/hopper line of business in October of 2013 as alleged in its expert's report, but instead, continued to hire brokers and service customers in this line of business.

Furthermore, Defendants have not located, and West Plains has not cited, any authority suggesting that Rule 407 applies to subsequent measures taken by a company to protect trade secret information and business relationships. Defendants submit that Rule 407 has no application to employment disputes brought by a company against its former employees and was not intended to exclude the employment agreements Defendants intend to offer at trial for the reasons stated above. Even if Rule 407 did apply, Defendants should be allowed to offer the employment agreements for purposes of proving: (1) the "feasibility of precautionary measures" West Plains could have taken to protect its alleged trade secret information and customer relationships; (2) that CT Freight is still competing in the bulk/hopper line of business; and (3) to impeach West Plains' witnesses. For these reasons, Defendants should not precluded *in limine* from offering West Plains' employment agreements for the CT Freight division after February 5, 2013.

### III.   Dr. Goss' Expert Opinion Is Relevant And Admissible.

West Plains is correct that Defendants' expert, Dr. Ernie Goss, does not give an opinion in his report as to the amount of damages CT Freight allegedly suffered as a result of Defendants' conduct and will not do so at trial. (See Filing No. 158, Exhibit 2, Goss Report).  Instead, Defendants intend for Dr. Goss to testify consistent with the matters contained in his report and discredit the methodology used by West Plains' expert to arrive at his opinion of West Plains' damages in this case.  Dr. Goss' opinions are not speculative, but instead, based on the documents and analysis utilized by West Plains' own expert, William Kenedy, in determining damages in this case.  The basis for Dr. Goss' conclusion that Mr. Kenedy's expert opinion is "without merit, too speculative, and inaccurate" is clearly laid out in his expert report and relevant for the jury to consider when determining the amount of damages, if any, suffered by West Plains.  As such, Dr. Goss should not be precluded *in limine* from testifying to the matters contained in his report.

### IV.   Evidence Not Produced In Discovery.

Without citing to any specifics, West Plains' argues that Defendants should be precluded from offering evidence not previously disclosed in discovery.  It is difficult, if not impossible, for Defendants to respond to West Plains' argument since it fails to identify any documents not produced by Defendants during the course of discovery or alleged failure to produce information requested by West Plains.  Defendants should not be precluded from offering any documents produced by the parties during the course of discovery and identified on the parties' exhibit lists, or any other document necessary for impeachment or rebuttal purposes.

**V.      Information Concerning QuatrA, LLC Is Relevant And Should Be Admissible.**

According to the Complaint, QuatrA, LLC is the owner of Plaintiff West Plains, LLC. (Filing

No. 1, ¶1).  However, Defendants have always understood Plaintiff's parent company to be BioUrja

Trading, LLC (Ex. 1, September 29, 2015 email from Paul Shotkoski to Patrick Flood).  For

purposes of this Motion in Limine, Defendants assume that Plaintiff West Plains is attempting to

exclude any reference to West Plains' parent company, whether it is QuatrA, LLC or BioUrja

Trading, LLC, and Defendants' argument in opposition to West Plains' Motion in Limine applies to

Defendants' intended reference to both entities.

West Plains seeks to exclude any references to QuatrA, LLC, other than disclosure that

QuatrA, LLC is West Plains' parent company, because such information is supposedly irrelevant and

would be unfairly prejudicial.  According to West Plains, information about QuatrA, LLC would be

prejudicial because its apparent affiliation with energy commodity trading companies may negatively

impact the jury. (Filing No. 158, Plaintiff's Brief in Support of Motion in Limine, pp. 6-7).  West

Plains offers no legal or evidentiary support for its assertion that evidence concerning QuatrA, LLC

would be unfairly prejudicial.

At trial, Defendants intend to offer evidence that QuatrA, LLC or BioUrja Trading, LLC

(through West Plains, LLC) is an ethanol trading company and acquired West Plains Company from

Defendant Bryce Wells because it was primarily interested in the grain trading side of the business

and wanted to diversify its trading portfolio.  As a result, Defendants will offer evidence reflecting

that several of the Individual Defendants became increasingly concerned for their jobs at CT Freight

because its parent company had no prior experience in the freight brokerage industry and focused

instead on the grain trading side of West Plains' business operations.  Due to this, and the fact that

7

new management located in Houston, Texas ignored the CT Freight division, several of the

Individual Defendants began looking for employment opportunities elsewhere, eventually choosing

to leave CT Freight for a better opportunity at RFG Logistics.  For example, at his deposition,

Defendant Todd Payzant explained the circumstances surrounding his decision to leave CT Freight

for RFG Logistics as follows:

> Q:     Regarding your decision to join RFG, what was the biggest motivating factor?
>
> A:     Job security.
>
> Q:     Any other factors?
>
> A:     Group cohesion, who my co-workers would be.
>
> Q:     Were you told that if you didn't join RFG that you would essentially be left on a sinking ship?
>
> A:     I don't know if I'd say that exactly?
>
> Q:     Did you believe CT Freight was going to shut its doors?
>
> A:     I did not know.
>
> Q:     But did you feel your job would be in jeopardy if you did not leave [CT Freight]?
>
> A:     The possibility worried me.
>
> Q:     And that was because so many people were leaving?
>
> A:     That was part of it.
>
> Q:     What was another part of it?
>
> A:     With the new ownership, West Plains, LLC, I worried that CT Freight would be irrelevant to their business scheme.
>
> Q:     What caused you to think that?

A:      They were an ethanol trading company, and they explained to us the reason why they purchased our parent company, West Plains Co., was to diversify their trading portfolio, and they wanted to get into the grain trading, which had nothing to do with CT Freight.

(Ex. 2, Deposition of Todd Payzant, pp. 45:6-46:6).

Accordingly, because the circumstances surrounding the Individual Defendants' collective decision to work for a competing Freight brokerage business is at the heart of this dispute, it would be unfairly prejudicial to exclude evidence or testimony concerning the parent company's commodity trading business to rebut West Plains' claim that the Individual Defendants resigned for no other purpose than to destroy the CT Freight division.

Additionally, because West Plains is owned by QuatrA, LLC (or BioUrja Trading, LLC), all of West Plains' profits and losses are rolled into that parent company's annual results.  (Ex. 1, September 29, 2015 email from Paul Shotkoski to Patrick Flood).  Again, because West Plains is the real party in interest seeking damages in this case, information concerning West Plains' parent company, and where the profits and losses for West Plains are reflected and reported, is relevant and should not be excluded *in limine*.

## CONCLUSION

For the reasons set forth above, Defendants request this Court to enter an Order denying Plaintiff's Motion in Limine in its entirety.

9

RETZLAFF GRAIN COMPANY,
INCORPORATED d/b/a RFG LOGISTICS, BRYCE
WELLS, JEFFREY BRADLEY,
THOMAS DANNER, REBECCA DANNER,
JODY MAY, CHAD NEEDHAM, TODD
PAYZANT, SAMANTHA RHONE, CRYSTAL
KONECKY, CINDY SCHOLTING, AND
DREW WAGGONER, Defendants


By:/s/Patrick M. Flood_____
Edward D. Hotz, #11927
Patrick M. Flood, #19042
Michael R. Peterson, #23444
PANSING HOGAN ERNST & BACHMAN LLP
10250 Regency Circle, Suite 300
Omaha, NE 68114
(402) 397-5500
(402) 397-4853 (facsimile)
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys for Plaintiff:

Paul M. Shotkoski
Kathryn A. Dittrick
Sarah McGill
Fraser Stryker PC LLO
550 Energy Plaza
409 South 17th Street
Omaha, NE 68102


/s/Patrick M. Flood_____