**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **WEST PLAINS, L.L.C., d/b/a CT FREIGHT COMPANY,** | **CASE NO.  8:13CV47** |
| **Plaintiff,** | |
| **vs.** | **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE*** |
| **RETZLAFF GRAIN COMPANY, INCORPORATED, d/b/a RFG LOGISTICS, BRYCE WELLS, JEFFREY BRADLEY, THOMAS DANNER, REBECCA DANNER, JODY MAY, CHAD NEEDHAM, TODD PAYZANT, SAMANTHA RHONE, CRYSTAL KONECKY, CINDY SCHOLTING, and DREW WAGGONER,** | |
| **Defendants.** | |

COMES NOW the Plaintiff, West Plains, L.L.C., d/b/a CT Freight Company ("West Plains" or Plaintiff) by and through its counsel of record, and hereby submits its reply brief in support of its Motion *in Limine* (Filing No. 157).  For the reasons stated below and in Plaintiff's brief in support of its Motion *in Limine* (Filing No. 158), Plaintiff respectfully requests the Court grant its Motion.

**ARGUMENT**

**A.    West Plain's Financial Statements and Audit Reports for 2012, 2013, and 2014**

Despite Defendants' effort to make West Plains' financial statements relevant by misconstruing Plaintiff's previous argument, the financial statements remain irrelevant and, if admitted at trial, unfairly prejudicial to Plaintiff.  Defendants argue that because West Plains "is the real party in interest with capacity to sue and recover damages" its financial condition is relevant.  However, Defendants fail to cite to any authority supporting the same.  Upon review of the three cases cited by Defendants, none of the cases support Defendants' proposition that West Plains' financial condition is relevant to CT Freight's claims for damages.  To the contrary, in analogous cases, courts have held

a plaintiff's parent company's finances are irrelevant.[1]   *See e.g.*, *N. States Power Co. v. City of Ashland, Wis.*, No. 12-CV-602-BBC, 2015 WL 1745880, at *10 (W.D. Wis. Apr. 16, 2015) (excluding *in limine* finances of the plaintiff's parent company as irrelevant); *In re Welding Fume Products Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *49 (N.D. Ohio June 4, 2010) (recognizing, in the context of reviewing an expert's opinion, the expert's analysis of the financial condition of the defendant companies' parents, not the defendant companies, made the opinion irrelevant because the relevant financial data must be specific to the defendant, not its parent); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, No. 87 C 9853, 1993 WL 62367, at *5 (N.D. Ill. Mar. 5, 1993) aff'd in part, vacated in part, 100 F.3d 1241 (7th Cir. 1996) opinion superseded on reh'g, 106 F.3d 1388 (7th Cir. 1997) and aff'd in part, vacated in part, 106 F.3d 1388 (7th Cir. 1997) (recognizing "evidence of a parent corporation's current financial health is irrelevant to the calculation of the value of a subsidiary corporation at the time of purchase").   The damages relevant to Plaintiff's claims are those West Plains suffered that are specific to the CT Freight division, and the best information relevant to calculating damages are the internal financial statements maintained by West Plains to track income and expenses and corresponding gross profits specific to the CT Freight division, which Plaintiff has already produced.   West Plains' overall financial condition, as shown in the financial statements and audit reports, is irrelevant to calculating and understanding the damages West Plains suffered as a result of the lost revenue and corresponding gross profits specific to its CT Freight division suffered as a result of Defendants' tortious conduct.   For example, West Plains could have had a particularly profitable year, due to its grain trading business, and such profits, if presented to the jury, could cause the jury to improperly dilute the actual damages suffered on account of Defendants' conduct.   The damages in the form of loss of profits and/or net operating losses flowing to West Plains from the CT Freight division are not specifically identifiable in West Plains' combined financial statements. *See generally* Filing No. 159, Exhibit A-1, West Plains' Financial Statement and Audit Report for 2013) (omitting any specific reference to the CT Freight division).

---

[1] While CT Freight is a division of West Plains, the closest cases on point discuss relative damages between a parent and subsidiary.

2

West Plains' financial statements and audit reports do not separately identify the financial results of the CT Freight division as a separate schedule to West Plains' financial statements. *See generally id.* West Plains' damages in the form of reduced revenue, gross profits and corresponding operating losses specific to the CT Freight division are not ascertainable from the financial statements and audit reports the Defendants seek to introduce at trial. *See generally id.* Therefore, such documents would not assist the jury in calculating damages and would serve only to mislead and confuse the jury. Furthermore, the only reason why Defendants would want to introduce West Plains had annual sales "in excess of $600,000,000," as stated by Defendants, is to cause unfair prejudice to Plaintiff due to the sales and assets of a completely unrelated division of West Plains'. Such evidence should be excluded under Fed. R. Evid. 403.

Lastly, Plaintiff has not placed West Plains' financial statements and audit reports in issue. *See, e.g.*, Filing No. 162 - Defendants' Response p. 3 (citing Filing No. 129 - Plaintiff's Brief in Opposition to Defendants' Motion for Partial Summary Judgment p. 2). In its Brief in Opposition to Defendants' Motion for Partial Summary Judgment, Plaintiff summarized CT Freight's total revenue and net income, but did not discuss the financial condition of West Plains as a whole. Plaintiff did not take the position that Defendant Bryce Wells unlawfully took the CT Freight business solely because it was the most profitable division of West Plains. Rather, Plaintiff's position is that Defendant Bryce Wells unlawfully took the CT Freight business because it was profitable, period. The profitability, and later, the operating losses, specific to the CT Freight division can only be determined from the internal financial statements prepared for the CT Freight division. That information is not separately reported in West Plains' combined financial statements. *See generally* Filing No. 159, Exhibit A-1, West Plains' Financial Statement and Audit Report for 2013. Therefore, pursuant to Federal Rules of Evidence 401, 402, and 403, West Plains' financial statements and audit reports should be excluded because such information is irrelevant and, if admitted, would be unfairly prejudicial to Plaintiff, cause confusion, and be misleading.

**B.**   **CT Freight's Employment Agreements with Employees Hired After February 5, 2013**

Defendants unavailingly offer four reasons to conjure relevance of CT Freight's employment agreements.   Defendants first argue the employment agreements are relevant to show CT Freight failed to take reasonable measures to protect CT Freight's trade secrets.   However, Defendants ignore the employment agreements fall squarely within the prohibition under Fed. R. Civ. P. 407.   *See* Fed. R. Civ. P. 407.   Rule 407 provides:  "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: . . . culpable conduct . . . or a need for a warning or instruction."  Fed. R. Civ. P. 407. Defendants attempt to limit Rule 407's purview by arguing that it does not apply to subsequent remedial measures taken by a company to protect its trade secrets. However, nothing in Rule 407, or any case law, limits Rule 407's applicability to all subsequent remedial measures taken to protect trade secrets.   To the contrary, the advisory committee notes support Plaintiff's proposition that its subsequent remedial measures should be excluded under Rule 407.   *See* Fed. R. Evid. 407 advisory committee notes, 1972 Proposed Rules ("The courts have applied this principle to exclude evidence of . . . changes in company rules . . . and the language of the present rule is broad enough to encompass **all of them**.") (citing Falknor, *Extrinsic Policies Affecting Admissibility*, 10 Rutgers L. Rev. 574, 590 (1956)) (emphasis added).   Here, in light of Defendants' tortious conduct, Plaintiff utilized employment agreements that were designed as additional protections against competition and theft of CT Freight's trade secrets.   *See e.g.,* Declaration of Paul Shotkoski ¶ 3, Ex. 1 - Employment Agreement of Tim Lukowski.   Therefore, the employment agreements constitute subsequent remedial measures under Rule 407.

Defendants also assert the employment agreements are relevant to show Defendants' customer solicitation was proper, CT Freight failed to timely hire replacements, and CT Freight did not abandon the Bulk Hopper Business.   *See* Filing No. 162 - Defendants' Response p. 5, bullet points 2, 3, and 4.   The employment agreements, in addition to setting forth general employment terms such as an employee's position, salary, and benefits, include provisions aimed at strengthening the

4

prohibition on misappropriating CT Freight's confidential information and trade secrets. *See e.g.,* Shotkoski Decl. ¶ 3, Ex. 1 - Lukowski's Employment Agreement.  Nothing in the employment agreements address whether and at what point CT Freight withdrew from the Bulk Hopper Business.  *See id.*  Moreover, evidence of dates of new hires or the feasibility of entering into such an agreement can easily be presented through other evidence and testimony.   Therefore, the employment agreements are irrelevant to Defendants' proposed, or any other, purposes.

Defendants lastly attempt to offer the employment agreements to show the feasibility of precautionary measures.  However, this exception to Rule 407 does not apply because the feasibility of precautionary measures is not disputed in this case. *See* Fed. R. Evid. 407 (the court may admit evidence of subsequent remedial measures only if the feasibility of such precautionary measures is disputed). Plaintiff does not dispute that the Individual Defendants were not subject to contractual non-solicitation restrictions following the termination of their employment with Plaintiff. Accordingly, because the employment agreements constitute subsequent remedial measures under Rule 407, are irrelevant for Defendants' proposed purposes, and no exceptions to Rule 407 apply, the Court should exclude *in limine* employment agreements CT Freight executed with its employees after February 5, 2013.

## C.     Dr. Goss' Opinion

Defendants admit Dr. Goss' opinion does not contain any calculations based on Dr. Goss' suggested methodologies and assumptions.  Dr. Goss simply guesses what Mr. Kenedy could have done by posing speculative questions.  To the extent any of his testimony is admissible, because Dr. Goss merely poses questions to Mr. Kenedy, his testimony should be limited to those questions and he should be precluded from testifying about alternative methodologies and assumptions considering he did not offer any opinions or calculations based on such methodologies and assumptions.

## D.     Evidence Not Produced in Discovery

Plaintiff agrees the parties should not be precluded from offering any documents produced by the parties during the course of discovery and identified on the parties'

5

exhibit lists.   Through this portion of its Motion in Limine, Plaintiff submits that documents used by Defendants for impeachment or rebuttal purposes should be excluded if they were not previously produced and were responsive to a prior request made during discovery.

### E.   QuatrA, LLC

Defendants should be precluded from arguing or testifying about QuatrA, LLC (QuatrA) or BioUrja Trading, LLC (BioUrja).   Defendants argue they intend to offer evidence of QuatrA or BioUrja to reflect that several of the Individual Defendants became concerned for their jobs based on CT Freight's parent company's focus on the grain trading side of West Plains' business instead of the freight brokerage industry. *See* Filing No. 162 - Defendants Response p. 7-9.   However, as shown in the excerpt from Todd Payzant's deposition, Payzant allegedly became concerned with CT Freight because of what he knew about *West Plains.   Id.*   Payzant did not make any reference to QuatrA or BioUrja.   *See id.*   Additionally, Defendants have not cited to any deposition testimony wherein the Individual Defendants identified QuatrA or BioUrja.   Therefore, any argument or testimony about QuatrA or BioUrja, beyond disclosure of West Plains' parent company during voir dire, is irrelevant and would be unfairly prejudicial to Plaintiff and therefore should be precluded.

### CONCLUSION

Based on the foregoing, Plaintiff respectfully requests the Court grant Plaintiff's Motion *in Limine* and preclude Defendants from presenting evidence, testimony, or argument related to (1) West Plains' financial statements and audit reports, (2) CT Freight's employee agreements with employees hired after February 5, 2013, (3) testimony of Defendants' expert witness, Ernest Goss, Ph.D., beyond the scope of his expert report, (4) documents not produced in discovery, and (5) QuatrA LLC or other affiliated corporations.

DATED this 5th day of November, 2015.

6

West Plains, L.L.C., d/b/a CT Freight
Company, Plaintiff,

BY:    /s/ Kathryn A. Dittrick             
       Paul M. Shotkoski, #20873
       Kathryn A. Dittrick, #23513
       Sarah L. McGill, #24790
       FRASER STRYKER PC LLO
       500 Energy Plaza
       409 South 17th Street
       Omaha, NE  68102-2663
       (402) 341-6000
       pshotkoski@fraserstryker.com
       kdittrick@fraserstryker.com
       smcgill@fraserstryker.com
       Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the United States District Court for the District Court of Nebraska using the CM/ECF system this 5th day of November, 2015, which will send notification of such filing to:

Edward D. Hotz, #11927
Patrick M. Flood, #19042
Michael R. Peterson, #23444
Pansing Hogan Ernst & Bachman LLP
10250 Regency Circle, Suite 300
Omaha, NE  68114
(402) 397-5500
ehotz@pheblaw.com
pflood@pheblaw.com
mpeterson@pheblaw.com

       /s/ Kathryn A. Dittrick           

1365841 v6