# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **WEST PLAINS, L.L.C.,** | | |
| **Plaintiff,** | | **8:13CV47** |
| **vs.** | | |
| **RETZLAFF GRAIN COMPANY INCORPORATED, BRYCE WELLS, JEFFREY BRADLEY, THOMAS DANNER, REBECCA DANNER, JODY MAY, CHAD NEEDHAM, TODD PAYZANT, SAMANTHA RHONE, CRYSTAL KONECKY, CINDY SCHOLTING, AND DREW WAGGONER,** | | **MEMORANDUM AND ORDER** |
| **Defendants.** | | |

This matter is before the Court on the Defendants' Motion in Limine (Filing No. 152) and the Plaintiff's Motion in Limine (Filing No. 157). For the reasons stated, the Defendants' Motion will be denied, and the Plaintiff's Motion will be granted in part.

## BACKGROUND

Plaintiff West Plains, L.L.C. d/b/a CT Freight Company ("Plaintiff") asserted seven causes of action against a competing freight brokerage business, Retzlaff Grain Company, Inc. d/b/a RFG Logistics ("RFG") and several of the Plaintiff's former employees, Bryce Wells ("Wells"), Jeffrey Bradley ("Bradley"), Thomas Danner, Rebecca Danner, Jody May ("May"), Chad Needham ("Needham"), Todd Payzant ("Payzant"), Crystal Konecky ("Konecky"), Samatha Rhone ("Rhone"), Cindy Scholting ("Scholting") and Drew Waggoner ("Waggoner") (collectively the "Individual Defendants"). The causes of action included (1) misappropriation of trade secrets by Plaintiff's former employees in violation of Neb. Rev. Stat. § 87-504; (2) misappropriation of trade secrets by RFG and Wells in violation of Neb. Rev. Stat. § 87-

504; (3) tortious interference with business relationships by all Defendants; (4) tortious interference with employment relationships by RFG and Wells; (5) breach of the duty of loyalty by Plaintiff's former employees; (6) conspiracy by all Defendants; and (7) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by Needham.  On October 28, 2015, the Court dismissed Plaintiff's claims for tortious interference with employment relationships and for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  (*See* Filing No. 167.)

## STANDARD OF REVIEW

In both Motions, the parties assert that the evidence at issue is either irrelevant or, if relevant, is unfairly prejudicial.  Under Federal Rule of Evidence 402, irrelevant evidence is inadmissible.  Rule 401 of the Federal Rules of Evidence states: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  The Eighth Circuit has explained that "Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" *United States v. Myers,* 503 F.3d 676, 681 (8th Cir. 2007).  "Generally, the balance of Rule 403 weighing should be struck in favor of admission." *Smith v. Tenet Healthsystem SL, Inc.,* 436 F.3d 879, 885 (8th Cir. 2006). However, whether the

probative value of challenged evidence is substantially outweighed by unfair prejudice "is a fact-intensive question," which must often be answered by the trial court in the course of trial. *Bennett v. Nucor Corp.,* 656 F.3d 802, 813 (8th Cir. 2011).

**DEFENDANTS' MOTION IN LIMINE**

Defendants assert that several categories of evidence related to Plaintiff's damages are inadmissible.

## I.    "Total Loss of Value" Theory of Damages

Defendants argue that a "total loss of value" theory of damages is inapplicable to any of Plaintiff's claims and Plaintiff should be precluded from introducing any evidence to support such a theory.   Although Defendants argue that the theory is inapplicable to each of Plaintiff's claims, Defendants provided argument only with respect to Plaintiff's trade secrets misappropriation claim and its remaining tortious interference claim.

### a.    Misappropriation of Trade Secrets Claims

Defendants argue that Plaintiff's damages for misappropriation of trade secrets are limited to (1) lost profits, (2) Defendants' unjust enrichment, or (3) some combination of the two.[1]   The Court recognizes that lost profits and unjust enrichment are the most common methods to measure damages in misappropriation cases.   *See Home Pride Foods*, 634 N.W.2d 774, 783 (Neb. 2001) (affirming damages award based on lost profits); *Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1244 (8th Cir.

---

[1] The Nebraska Supreme Court has not determined "whether a plaintiff may recover damages for both his or her lost profits and damages for unjust enrichment based on the defendant's gain." *Home Pride Foods, Inc. v. Johnson*, 634 N.W.2d 774, 783 (Neb. 2001). In *Home Pride Foods*, the court noted that a majority of courts hold that damages in misappropriation cases "are to be calculated by either the plaintiff's lost profits or the defendant's gain, whichever is greater, but not a combination of the two." *Id.* (citing Michael A. Rosenhouse, Annot., *Proper Measure and Elements of Damages for Misappropriation of Trade Secret*, 11 A.L.R.4th 12 (1982 & Supp. 2001)). However, "[o]ther courts allow for a combination of lost profits and unjust enrichment damages under certain circumstances that are not present in this case." *Id.*

1994) ("In general, both lost profits and unjust enrichment theories have been widely accepted."); *DeVries v. Starr*, 393 F.2d 9, 19 (10th Cir. 1968) ("Loss of profits, where reasonably ascertainable, have been the usual measure of compensatory damages in cases like these."). The question before the Court is not the most appropriate measure of damages for this case, but whether evidence of damages based on loss of value is admissible with respect to Plaintiff's claim for trade secret misappropriation. Thus, the Court first looks to whether the Nebraska Deceptive Trade Practices Act ("NDTPA"), Neb. Rev. Stat. §§ 87-501 to 87-507 (Reissue 2014), limits damages to lost profits and/or unjust enrichment. With respect to damages, the NDTPA states:

> [A] complainant shall be entitled to recover damages for misappropriation. Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

Neb. Rev. Stat. § 87-504. The statute, on its face, does not limit damages in a misappropriation case to lost profits and/or unjust enrichment. Although the statute identifies some methods of computing damages, it does not create an exhaustive list of methods. It refers to "actual loss" as a method of computation, and specifically states that a royalty may be imposed in lieu of "damages measured by any other methods." Neb. Rev. Stat. Ann. § 87-504; *see also Pioneer Hi-Bred*, 35 F.3d at 1243 ("Courts have used a *wide variety of methods* to measure damages in trade secret cases, including lost profits, unjust enrichment and reasonable royalty.") (emphasis added).

While the Nebraska Supreme Court has not addressed the issue, other jurisdictions have determined that "a particular measure of damages has been held to

4

be inappropriate only where the causal relationship between the misappropriation and the particular loss or gain being measured was not sufficiently shown, where application of the measure would have resulted in double recovery, or where another measure afforded more substantial relief." Michael A. Rosenhouse, Annot., *Proper Measure and Elements of Damages for Misappropriation of Trade Secret*, 11 A.L.R.4th 12 (1982 & Supp. 2015)). For example, in *De Vries v Starr*, although the court recognized that lost profits, where ascertainable, is the usual measure of damages in a misappropriation case, the court held that a plaintiff whose business was destroyed through misappropriation of a trade secret was entitled to recover damages measured by the value of his business. 393 F.2d at 20.

The Court is persuaded by the plain language of § 87-504, and the reasoning of courts in other jurisdictions, that recovery in a trade secrets case is not limited to lost profits or unjust enrichment. While Plaintiff will bear the burden of demonstrating that loss of value is the appropriate measure of damages and that the loss of value, if any, was caused by Defendant's misappropriation, Plaintiff is not precluded from offering evidence to support its loss-of-value theory. Accordingly, Defendants' Motion in Limine with respect to the misappropriation of trade secrets claim will be denied at this stage of the proceedings.

### b. Tortious Interference Claims

Defendants also argue that lost value is not the proper measure of damages for Plaintiff's tortious interference claims. Defendants draw the Court's attention to a case involving a claim for breach of loyalty in which the Eighth Circuit said:

Under Nebraska law, "prospective profits from an established business, prevented or interrupted by the tortious conduct of the defendant, are

recoverable when it is proved (1) that it is reasonably certain such profits would have been realized except for the tort, and (2) that the lost profits can be ascertained and measured, from evidence introduced, with reasonable certainty."

*Triple R Indus., Inc. v. Century Lubricating Oils, Inc.*, 912 F.2d 234, 237-38 (8th Cir. 1990) (quoting *K & R, Inc. v. Crete Storage Corp.,* 231 N.W.2d 110, 114 (Neb. 1975)).

Defendants suggest this language indicates that lost profits are the *only* acceptable measure of damages in a tortious interference case. However, this Court does not draw such an inference. Defendants acknowledge that courts in other jurisdictions have contemplated loss-of-value damages in certain circumstances. For example, the Eleventh Circuit held that under Florida law,

if a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of the loss. If the business is not completely destroyed, then it may recover lost profits. A business may not recover both lost profits and the market value of the business.

*KMS Rest. Corp. v. Wendy's Int'l Inc.*, 194 F. App'x 591, 601 (11th Cir. 2006) (citations omitted). In *KMS*, the Eleventh Circuit upheld the district court's refusal to include an instruction to the jury on this statement of the law because there was no evidence that the plaintiff's business was completely destroyed. The reasoning in *KMS* may support an argument that, to recover lost value damages for tortious interference, Plaintiff must demonstrate that its business was destroyed; however, the Court cannot determine at this stage of the proceedings whether Plaintiff is limited to a lost profits theory of damages on its tortious interference claim. Accordingly, Defendants' Motion in Limine will be denied.

## II.    Duplicative Damages

Defendants contend that Plaintiff cannot, as a general matter, recover both lost value and lost profit damages because such a recovery would be duplicative.  Although the parties have not cited any relevant Nebraska statutes or case law on this issue, the Court recognizes that courts in other jurisdictions have concluded that, for certain claims, lost profits and loss-of-value damages are duplicative. *KMS Rest. Corp.*, 194 F. App'x at 601.  As noted above, however, the record presently before the Court prevents a pretrial determination of whether the Plaintiff is precluded from offering evidence of loss of value as a potential measure of damages for some claims.  The question of whether the probative value of such evidence may be unfairly prejudicial is fact-intensive and claim-specific, and likely can only be answered in the course of the trial. *See Bennett,* 656 F.3d at 813.  While an award of damages based on both lost profits and loss of value likely would be duplicative, the Court will not preclude the Plaintiff, in limine, from offering evidence in support of both theories of damages.  Careful wording of the instructions to the jury should serve to prevent any award of duplicative damages.

## III.    Damages Limited to "West Plains, LLC"

Defendants argue that lost-profits damages must be limited to those incurred by West Plains, LLC, and cannot include any lost profits incurred by CT Freight, an unincorporated division of West Plains, LLC.   Specifically, Defendants argue that Plaintiff's expert has only established the damages suffered by CT Freight and has failed to identify any losses suffered by West Plains, LLC.  The parties have not cited any applicable Nebraska law on this issue. In *Western Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 591 (5th Cir. 1980), a case Defendants cite in support of their argument,

7

the Fifth Circuit noted that "[a] division of a corporation is not a separate legal entity but is the corporation itself." (Citations omitted). Because CT Freight is a division of West Plains, LLC, and not a separate legal entity, any damages accruing to CT Freight necessarily accrue to West Plains, LLC. Accordingly, Plaintiff will not be precluded from offering evidence of damages accruing to its CT Freight division.

## IV.     Expert Reports and Communications from Experts

Defendants move the Court to exclude expert reports and communications from the Plaintiff's expert to counsel for Plaintiff. Plaintiff responded that it will not offer the expert report or the communications. Accordingly, the Motion will be denied as moot.

## V.     Damages for Breach of Duty of Loyalty

Defendants argue that Plaintiff's recovery on its breach-of-duty-of-loyalty claim is limited to compensation paid to the Individual Defendants during the period of their breach. Defendants cite *Neece v. Severa*, 560 N.W.2d 868, 873 (Neb. Ct. App. 1997), which quoted the rule articulated in the Restatement (Second) of Agency § 469:

> An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a willful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned.

560 N.W.2d at 873 (citing Restatement (Second) of Agency § 469 at 399 (1958)). Defendants assert that, based on this rule, Plaintiff is precluded from seeking any damages other than compensation paid during the period of breach. Nothing in *Neece*, nor the quoted Restatement language, however, limits recovery to compensation during the period of breach. The scope of Plaintiff's damages will depend on its ability to prove causation. *See Frederick on behalf of Salem Grain Co., Inc. v. Merz*, No. A-12-665,

2013 WL 5976352, at \*5-6 (Neb. Ct. App. Nov. 12, 2013).  Plaintiff will not be limited to offering evidence of damages based solely on compensation paid to Defendants during the period of their alleged breach of loyalty.

Defendants also argue that Plaintiff failed to disclose the method it would use to compute damages in support of its breach-of-duty-of-loyalty claim.  Federal Rule of Civil Procedure 26(a)(1)(A)(iii), states "a party *must, without awaiting a discovery request,* provide to the other parties: a computation of each category of damages claimed by the disclosing party . . . ." (emphasis added). Rule 37(c)(1) states, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  District courts have "wide discretion" to fashion appropriate remedies for a party's failure to timely disclose. *Wegener v. Johnson,* 527 F.3d 687, 692 (8th Cir. 2008). The factors to consider include "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.* (citing *Sellers v. Mineta,* 350 F.3d 706, 711-12 (8th Cir. 2003)).

The record demonstrates that Plaintiff's forfeiture-of-compensation theory was first specifically referenced a few days before the final pretrial conference.  On August 7, 2013, Plaintiff provided the following Answer to Defendants' Interrogatory No. 19 requesting all monetary damages Plaintiff is claiming in this lawsuit and the methodology used to calculate those damages:

> **INTERROGATORY NO. 19:** Please set forth all monetary damages you [West Plains, LLC] are claiming in this lawsuit, and include in your answer

the methodology used to calculate those damages and identify any documents relied upon to arrive at your figure.

**ANSWER:** Plaintiff estimates its damages at approximately $99,000 per month in lost profits incurred since February 2013 and continuing, a loss in the overall value of CT Freight as a going concern in an amount to be calculated based upon any pattern of lost profits, plus additional damages of lost time and other costs to remedy Defendants' unlawful conduct in the amount of $43,517.50, as well as interest that has accrued since the date this action was filed, costs of the action, attorney fees, as applicable. Plaintiff's internal calculation of its damages is continuing, and this response may be supplemented accordingly.

(Filing No. 173-1 at ECF 36-37.) On October 1, 2015, Plaintiff supplemented its Rule 26(a)(1) Disclosures to read:

**C.** A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

**RESPONSE:** Plaintiff estimates its damages at approximately $99,000 per month in lost profits incurred since February 2013 and continuing, a loss in the overall value of CT Freight as a going concern in an amount to be calculated based upon any permanent lost profits, plus additional damages of lost time and other costs to remedy Defendants' unlawful conduct in the amount of $43,517.50, as well as interest that has accrued since the date this action was filed, costs of the action, and attorney fees, as applicable.

**SUPPLEMENTAL RESPONSE:** Pease (sic) see report of William W. Kenedy, CPA/ABV/CFF, produced January 30, 2015.

(Filing No. 155-1 at ECF 18.) None of the discovery responses through October 1, 2015, referenced forfeiture of compensation during the period of disloyalty or provided an explanation as to how such damages would be calculated. On October 29, 2015, one week prior to the final pretrial conference, Plaintiff again revised the answer in its Rule 26(a)(1) Disclosures to read:

**REVISED RESPONSE:** Plaintiff estimates a portion of its damages according to the report of William W. Kenedy, CPA/ABV/CFF, produced January 30, 2015. As noted in his report, Plaintiff claims damages of $2,131,000 for the lost value of its bulk hopper commodity business that was either transferred by the Defendants to their new company or lost due to the conduct of the Defendants, and additional operating losses proximately caused by the Defendants' concerted tortious conduct in the amount of $330,000.00. Plaintiff will also seek recovery of lost revenue and the corresponding loss of estimated profits on specific loads tendered by customers to Plaintiff prior to February 5, 2013, that Plaintiff is able to prove at trial were cancelled and transferred to Defendants' new freight broker company. *Plaintiff also estimates additional damages of lost time, unjust enrichment, forfeiture of compensation*, and other costs to remedy Defendants' unlawful conduct, in amounts to be proven at trial, according to documents previously produced in this case. *Forfeiture of compensation is estimated for the months of November 2012, December 2012, and January 2013, for all Individual Defendants (Jeffery Bradley, Thomas Danner, Rebecca Danner, Jody May, Chad Needham, Todd Payzant, Samantha Rhone, Crystal Konecky, Cindy Scholting, and Drew Waggoner), to total approximately $188,136.82.*

(Filing No. 173-1 at ECF 12 (emphasis added).)  Thus, the first time Plaintiff specifically referenced forfeiture of compensation and explicitly outlined a computation of such damages was October 29, 2015.

Although Plaintiff did not disclose the mathematical calculations for forfeiture of compensation until October 29, 2015, the Court concludes that, for purposes of these Motions, Plaintiff's omission was harmless or the omission did not unduly prejudice Defendants.  *See Wegener,* 527 F.3d at 692.  The Court notes that although the deadline for filing pretrial disclosures was October 5, 2015 (Filing No. 144), the deposition deadline was October 31, 2015.  Even if Defendants were surprised by the additional theories of damages referenced in Plaintiff's Supplemental Rule 26(a) Disclosures, Defendants had time before the close of discovery to move for an extension of discovery deadlines to conduct depositions related to the new theories.  In the cases cited by Defendants in support of their Motion, the disclosure either occurred after close of discovery or not at all.  *See, e.g., Design Strategies, Inc. v. Davis*, 469 F.3d

11

284, 296 (2nd Cir. 2006) (excluding lost profits evidence for calculation provided well after close of discovery); *Szusterman v. Amoco Oil Co.*, 112 Fed. Appx. 130, 131-132 (3rd Cir. 2004) (excluding evidence of any damages where plaintiff failed to provide any explanation for calculation of damages).

Defendants were aware they would be defending Plaintiff's breach-of-duty-of-loyalty claim, and likely conducted discovery with respect to the period of alleged disloyalty for each Individual Defendant. Plaintiff provided Defendants with personnel files for each of the Individual Defendants. Thus, Defendants had access to evidence of the compensation received by each of the Individual Defendants during the alleged period of disloyalty. Defendants have not demonstrated how the late disclosure of Plaintiff's method of calculating damages on this claim was prejudicial to Defendants' trial preparation. The Court concludes that Defendants' Motion will be denied without prejudice to reassertion at trial if Defendants demonstrate they were unduly prejudiced by the late disclosure of any particular item of evidence.

## VI.    New Theories of Damages

Defendants broadly move to exclude evidence supporting new theories of computing damages included in the Plaintiff's Supplemental Rule 26(a) Disclosures of October 29, 2015. Defendants do not specifically address such theories other than forfeiture of compensation. Accordingly, for the reasons set forth in Section V, Defendants' Motion will be denied without prejudice to reassertion at trial.

## VII.   Evidence of Damages After Expiration of Temporary Injunction

Defendants argue that Plaintiff may not recover lost-profit damages after the Court's Preliminary Injunction (Filing No. 45) expired on April 5, 2015, because any

damages suffered by Plaintiff after the Preliminary Injunction were not caused by any tortious conduct of the Defendants. Defendants cite *Aon Consulting, Inc. v. Midlands Financial Benefits, Inc.*, 748 N.W.2d 626 (Neb. 2008), wherein the Nebraska Supreme Court affirmed the trial court's determination that evidence regarding lost-profit damages after a two-year non-solicitation agreement expired would be speculative and irrelevant, and therefore, inadmissible. *Id.* at 639-40. The court reasoned that the defendant would have been free to solicit business from the plaintiff's customers after the two-year restricted period, and there was evidence in the record that customers could change brokers whenever they chose to do so, without prior notice. *Id.* at 640.

At this stage, the Court is unable to determine whether damages incurred after the Preliminary Injunction period are speculative or irrelevant. As noted above, Plaintiff may recover damages for injuries caused by the Defendants' tortious conduct, if any. The expiration of a preliminary injunction is not comparable to the expiration of a non-solicitation agreement or non-compete agreement. If Plaintiff offers evidence of damages incurred after the expiration of the Preliminary Injunction, it will be required to prove that such damages were caused by Defendants' unlawful conduct. Until the Court hears such evidence, it cannot determine whether it is speculative.

Defendants also reference comment h to Restatement (Third) of Unfair Competition § 45 (1995), which states:

> *h. Limitation on monetary relief.* Monetary remedies, whether measured by the loss to the plaintiff or the gain to the defendant, are appropriate only for the period of time that the information would have remained unavailable to the defendant in the absence of the appropriation. This period may be measured by the time it would have taken the defendant to obtain the information by proper means such as reverse engineering or independent development. Similarly, the issuance of a patent or other public disclosure of the information by the plaintiff or a third person terminates the secrecy necessary to the protection of the trade secret. Monetary relief based on

the defendant's use of the information after the loss of secrecy is therefore appropriate only to the extent necessary to remedy a head start or other unfair advantage attributable to the defendant's prior access to the information. The limitations on the appropriate duration of injunctive relief as stated in § 44, Comment *f*, are thus also generally applicable to the calculation of monetary relief.

Comment *f* of § 44 states that "injunctive relief should ordinarily continue only until the defendant could have acquired the information by proper means. Injunctions extending beyond this period are justified only when necessary to deprive the defendant of a head start or other unjust advantage that is attributable to the appropriation." Adapted to damages, this limitation—known as the "head start" rule—requires that a plaintiff may only recover money damages for a period until the defendant could have acquired the information by proper means, unless the plaintiff can demonstrate that damages beyond this period are justified. Accordingly, although the Plaintiff here will be precluded from recovering any damages it cannot prove were caused by the Defendants, the Plaintiff may present evidence in an attempt to prove damages it suffered during the "head start" period and any other unjust advantage attributable to Defendants' alleged tortious conduct.

## PLAINTIFF'S MOTION IN LIMINE

### I.    Evidence of Overall Financial Condition of West Plains, LLC

Plaintiff argues that Defendants should be precluded from offering evidence of the financial statements and audit reports of West Plains, LLC, as a whole, and of other divisions of West Plains, LLC. Plaintiff argues that such evidence is not material to an assessment of Plaintiff's claim for damages, and is irrelevant and unduly prejudicial. Plaintiff argues that this case is analogous to cases where courts have held that a plaintiff's parent company's finances are irrelevant. *See e.g.*, *N. States Power Co. v. City of Ashland, Wis.*, No. 12-CV-602-BBC, 2015 WL 1745880, at *10 (W.D. Wis. Apr.

16, 2015) (excluding *in limine* finances of the plaintiff's parent company as irrelevant); *In re Welding Fume Products Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *49 (N.D. Ohio June 4, 2010) (recognizing, in the context of reviewing an expert's opinion, the expert's analysis of the financial condition of the defendant companies' parents, not the defendant companies, made the opinion irrelevant because the relevant financial data must be specific to the defendant, not its parent). Plaintiff argues that, based on this reasoning, West Plains LLC's overall financial condition is irrelevant to calculating and understanding the damages it suffered due to losses in the CT Freight division.

At this stage, the Court cannot determine whether West Plains, LLC's financial records are relevant or unduly prejudicial. Each of the cases Plaintiff cited involved suits against a subsidiary entity. Plaintiff chose to bring this action in the name of West Plains, LLC, and alleges damages to West Plains, LLC. Plaintiff nevertheless argues that it can recover damages accruing solely to the CT Freight division without consideration of West Plains, LLC, as a whole. While evidence of West Plains, LLC's overall financial condition may be irrelevant with respect to some methods of measuring damages, its overall condition may be relevant to other damages calculations, such as loss of overall value. Because CT Freight is not a separate entity, it is unclear whether Plaintiff can recover based solely on the loss in value to CT Freight without consideration of West Plains, LLC, as a whole. Accordingly, the Court will not grant Plaintiff's Motion in Limine, but will consider objections at the time of trial.

## II.    Agreements With Employees Hired After February 5, 2015

Plaintiff next argues that Defendants should be precluded from introducing evidence of agreements with any employees Plaintiff hired after February 5, 2013,

because such information is irrelevant. Defendants offer four reasons why Plaintiff's employment agreements are relevant. Defendants first argue the employment agreements show Plaintiff failed to take reasonable measures to protect CT Freight's trade secrets. Federal Rule of Civil Procedure 407 provides: "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: . . . culpable conduct . . . or a need for a warning or instruction." Fed. R. Civ. P. 407. Defendants argue that Rule 407 does not apply to subsequent remedial measures taken by a company to protect its trade secrets. However, nothing in Rule 407, or any case law cited, so limits Rule 407's applicability. To the contrary, the advisory committee notes state that Rule 407 should be applied broadly. *See* Fed. R. Evid. 407 advisory committee notes, 1972 Proposed Rules ("The courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, *changes in company rules*, and discharge of employees, and the language of the present rule is broad enough to encompass all of them.") (emphasis added) (citing Falknor, *Extrinsic Policies Affecting Admissibility*, 10 Rutgers L. Rev. 574, 590 (1956)). The language in the employment agreements regarding trade secrets reflects a change in company rules or policy, or at least a more direct statement of already existing rules. Accordingly, to the extent Defendants wish to use the employment agreements to show Plaintiff failed to take reasonable measures to protect its trade secrets, such evidence is inadmissible under Rule 407.

Defendants also assert the employment agreements are relevant to show Defendants' customer solicitation was proper; that Plaintiff failed to timely hire replacements; and that Plaintiff did not abandon the Bulk Hopper Business. A review of

16

the employment agreements reveals that they do not address whether and at what point CT Freight withdrew from the Bulk Hopper Business. Moreover, evidence of dates of new hires and their job duties can be presented through other evidence and testimony. Absent a showing that Defendants cannot establish such evidence by other means, the probative value of the employment agreements is outweighed by the prejudicial impact under Rule 407.

Defendants argue that the employment agreements are necessary show the feasibility of precautionary measures. Although Rule 407 excludes evidence of subsequent remedial measures, "the court may admit this evidence for another purpose, such as impeachment or—*if disputed*—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Civ. P. 407 (emphasis added). This exception to Rule 407 does not apply because the feasibility of precautionary measures is not disputed in this case. Plaintiff does not dispute that the Individual Defendants were not subject to contractual non-solicitation restrictions following the termination of their employment with Plaintiff, or that the Individual Defendants had employment agreements with no language addressing Plaintiff's trade secrets. Accordingly, this exception does not apply. Because the employment agreements constitute subsequent remedial measures under Rule 407 and no exceptions to Rule 407 apply, the Court excludes *in limine* employment agreements CT Freight executed with its employees after February 5, 2013.

## III.    Testimony of Dr. Ernest Goss

Plaintiff argues that Defendants' expert, Ernest Goss, Ph.D. ("Dr. Goss"), should be precluded from offering any testimony of his opinions not supported by his expert

report. Specifically, Plaintiff argues that Dr. Goss attacked the appropriateness and methodology of the damages calculation of Plaintiff's expert without offering damages estimates based on Dr. Goss's suggested methodology and assumptions. Defendants admit that Dr. Goss did not give an opinion in his report as to the amount of damages and will not do so at trial. Defendants state that Dr. Goss will testify consistent with the matters contained in his report to discredit Plaintiff's expert. Based on Defendant's representation, Dr. Goss will not be precluded from testifying as to the matters contained in his report. To the extent Plaintiff seeks to challenge the admissibility of Dr. Goss's testimony on *Daubert* grounds, its Motion is not timely. Further, Plaintiff may challenge weaknesses in Dr. Goss's methodology and conclusions through cross-examination and its own experts. *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007); *see also Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, Plaintiff's Motion will be denied.

## IV. Evidence Not Produced in Discovery

Plaintiff argues that Defendants should be precluded, in limine, from offering any documents for impeachment or rebuttal purposes if they were not produced in response to a discovery request. At this stage, no evidence has been offered that was not produced in discovery. Accordingly, the Motion will be denied without prejudice to reassertion at the trial.

## V.    QuatrA, LLC

Plaintiff seeks to exclude any reference to West Plains, LLC's parent company, QuatrA, LLC, or any other related companies.  Plaintiff argues that any reference to QuatrA, LLC, except during voir dire, is irrelevant.  Plaintiff also suggests that because QuatrA, LLC is an energy commodities trading company, the jury could hold such information against Plaintiff given negative public perceptions of oil companies.

Defendants respond that they intend to offer evidence that QuatrA, LLC, or BioUrja Trading, LLC, is an ethanol trading company that acquired West Plains Company (through West Plains, LLC) from Defendant Bryce Wells because QuatrA, LLC, was primarily interested in the grain trading side of the business and wanted to diversify its trading portfolio.  Thus, according to Defendants, several of the Individual Defendants were concerned for their jobs at CT Freight because the parent company had no prior experience in the freight brokerage industry and intended to focus on the grain trading side of West Plains Company's business.  Defendants cite the deposition testimony of Payzant as an example of the Individual Defendants' concerns when leaving CT Freight:

> Q: But did you feel your job would be in jeopardy if you did not leave [CT Freight]?
>
> A: The possibility worried me.
>
> Q: And that was because so many people were leaving?
>
> A: That was part of it.
>
> Q: What was another part of it?
>
> A: With the new ownership, West Plains, LLC, I worried that CT Freight would be irrelevant to their business scheme.

19

Q: What caused you to think that?

A: They were an ethanol trading company, and they explained to us the reason why they purchased our parent company, West Plains Co., was to diversify their trading portfolio, and they wanted to get into the grain trading, which had nothing to do with CT Freight.

(Filing No. 163-2, Payzant Dep. at 45:6-46:6.)

Plaintiff argues Payzant's statement is in reference to West Plains, LLC, and not QuatrA, LLC. Further, neither Payzant nor any of the Individual Defendants made any reference to QuatrA or BioUrja as reasons for their departure. Therefore, according to Plaintiff, any argument or testimony about QuatrA or BioUrja, beyond disclosure of Plaintiff's parent company during voir dire, is irrelevant and would be unfairly prejudicial to Plaintiff and therefore should be precluded.

The relevance of any reference to QuatrA, LLC, is not clear at this stage. If evidence demonstrates that QuatrA, LLC, created West Plains, LLC, for the sole purpose of acquiring West Plains Company, Payzant's reference to the "new ownership" may have been meant to include QuatrA, LLC. Further, Payzant's employment concerns appear to have been based on the new owner's status as an ethanol company that might not have an interest in the freight brokerage business. At this point, it is unclear what information Defendants intend to offer aside from the Individual Employees' understanding of West Plains, LLC, or QuatrA, LLC's business scheme. Based on the record presently before the Court, such information does not appear to be unfairly prejudicial to Plaintiff. Accordingly, the Motion in Limine will be denied without prejudice to reassertion at the time of trial.

## CONCLUSION

For the reasons stated above, Defendants' Motion in Limine will be denied, without prejudice to reassertion of objections consistent with this Memorandum and Order.

Plaintiff's Motion under Rule 407 will be granted as to Plaintiff's employment agreements entered into after February 5, 2013. The admissibility of the remaining evidence referenced in the Plaintiff's Motion in Limine will be evaluated at trial. Accordingly, the remainder of Plaintiff's Motion in Limine will be denied, without prejudice to reassertion of objections consistent with this Memorandum and Order.

IT IS ORDERED:

1.      Defendants' Motion in Limine (Filing No. 152), is denied;

2.      Plaintiff's Motion in Limine (Filing No. 157), is granted, in part, as follows:

> Consistent with this Memorandum and Order, Defendants are precluded, in limine, from mentioning, making reference to, eliciting testimony regarding, or offering evidence of employment agreements of individuals hired by West Plains, LLC, after February 5, 2013;

> The Motion is otherwise denied.

Dated this 13th day of January, 2016

BY THE COURT:


s/Laurie Smith Camp
Chief United States District Judge